## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

William S. McClean, Jr.,

                         Plaintiff,

v.                                    5:25-CV-1237
                                    (AMN/MJK)

Diane McCarthy,

                         Defendant.

---

William S. McClean, Jr., Plaintiff *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Anne M. Nardacci, U.S. District Judge:

### ORDER & REPORT- RECOMMENDATION

On September 8, 2025, McClean began this action by filing a Complaint and moving for leave to proceed *in forma pauperis* ("*IFP*") (Dkts. 1, 4). The Clerk sent McClean's Complaint and *IFP* application to this Court for review. (Dkts. 1, 4).

## I.    BACKGROUND

While both men were incarcerated, Carl Timm sought McClean's help in obtaining Compassionate Release. (Complaint, Dkt. 1, pg. 5, at ¶1). McClean decided to help Timm who was suffering from cancer. (*Id.* at ¶3). While helping Timm, McClean discovered that Timm's "paralegal/fiduciary," Lauren Mas was "attempting to steal by fraud all

1

of" Timm's assets. (*Id.* at ¶4). McClean retrieved $26,000 of the $52,000 that Mas had taken "through a series of motions to Mr. Timm's sentencing court and demand letter." (*Id.*) (cleaned up). McClean then re-wrote Timm's will so that McCarthy "would be the executor and sole heir" of Timm's estate. (*Id.* at ¶5).

Sometime after she was named Executor and heir of Timm's estate, McCarthy made Timm believe that his assets would be used "to purchase bed space at a nursing home/hospice care facility near her home." (*Id.*). Likewise, McCarthy made Timm believe that she would bury him where, and in the manner, he wanted to be buried. *See* (*Id.*). Yet when Timm died, McCarthy had his corpse cremated at the Bureau of Prison's expense. (*Id.*).

McClean alleges that Timm "was sure that the motions" McClean "filed in U.S. District Court on his behalf would result in Ms. Lauren Mas returning his $52,000" so Timm "wrote a letter to" McClean and McCarthy notifying McCarthy that "she was to pay" McClean "one half of any" money retrieved from Mas. (*Id.*). McClean secured $26,612.01 from Mas. (Complaint, Dkt. 1, pg. 5).

Now, McClean argues that McCarthy must pay him $13,306 because he obtained $26,612 from Lauren Mas (*Id.*).

\* \* \*

McClean brings this action claiming diversity of citizenship.[1] To meet the citizenship requirement, McClean alleges that he is a North Carolina resident and McCarthy is a New York resident. (Complaint, Dkt. 1, pg. 3). To meet the amount in controversy requirement, McClean alleges that the case it worth $150,000 because he is entitled to $13,306 of compensatory damages and $136,694 of punitive damages. (Complaint, Dkt. 1, pg. 5).

## II.    IFP APPLICATION

McClean declares in his *IFP* applications that he is unable to pay the filing fee. (Dkt. 4). After reviewing his application, this Court finds that McClean is financially eligible for *IFP* status.

## III.    STANDARD OF REVIEW

On their own, courts can dismiss a case—at any time—if they determine that an action is (1) frivolous or malicious; (2) fails to state a

---

[1] McClean also claims that he is bringing this action under Federal Question jurisdiction, but he has not pleaded a federal question. *See* 28 U.S.C. §1331; *see also Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908).

claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the Complaint lacks an arguable basis in law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (cleaned up); 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

Courts must show liberality toward *pro se* litigants and use extreme caution when *sua sponte* dismissing *pro se* complaints. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000). Still, courts have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## IV.  DISCUSSION

**The District Court should dismiss McClean's Complaint because it does not have subject matter jurisdiction over McClean's claim.**

The Court recommends dismissing McClean's case *without prejudice and without leave to amend*.[2] Federal Courts must have subject matter jurisdiction to hear a case. Yet here, the District Court does not have such jurisdiction. As a result, the District Court cannot hear McClean's claim, so it should dismiss McClean's Complaint for lack of subject matter jurisdiction.

Federal Courts have subject matter jurisdiction over an action between citizens of different states where the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332. While courts "customarily interpret a plaintiff's allegations of damages as sufficient to satisfy the amount-in-controversy requirement," it need "not do so when it is a legal certainty that the plaintiff cannot recover the damages he seeks." *Nwanza v. Time, Inc.*, 125 F. App'x 346, 348 (2d Cir.

---

[2] Because this Court recommends dismissing the Complaint for lack of subject matter jurisdiction, the District Court cannot dismiss this case with prejudice. *JetBlue Airways Corp. v. CopyTele Inc.*, 629 F. App'x 44, 45 (2d Cir. 2015) (summary order) ("where a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.") (cleaned up).

2005) (summary order). "Additionally, where . . . the jurisdictional amount is met only by inclusion of a claim for punitive damages, such calculation must be considered with heightened scrutiny." *Int'l Christian Broad., Inc. v. Koper*, 928 F. Supp. 2d 559, 562 (E.D.N.Y. 2013).

Construing McClean's Complaint as alleging fraud, McClean's claim does not meet the amount in controversy requirement. McClean alleges that his claim entitles him to only $13,306.00. (Complaint, Dkt. 1, pg. 5). This is woefully short of the $75,000 amount in controversy requirement. To fix this issue, McClean includes his punitive damages request to establish the District Court's jurisdiction. (*Id.* at pg. 4). But "punitive damages for fraud are recoverable only where the fraud, aimed at the public generally, is gross and involves high moral culpability." *Carling v. Peters*, 10-CV-4573, 2013 WL 865822, at *8 (S.D.N.Y. Feb. 6, 2013) (cleaned up). "Whatever bad faith and evil intent" McClean "alleges with respect to" McCarthy's conduct is "private in nature not public." *Int'l Christian Broad., Inc.* 928 F. Supp. 2d at 562 (finding that there is a legal certainty that the amount in controversy requirement is not met). As a result, it is a legal certainty that McClean

cannot obtain punitive damages. And because he cannot, McClean's claim cannot satisfy the amount in controversy requirement. Thus, the District Court should dismiss McClean's Complaint for lack of subject matter jurisdiction. *See, e.g., Powell v. Johnson,* 11-CV-1432 (GTS/DEP), 2012 WL 4052261 *13 (N.D.N.Y.2012) (dismissing breach of contract claim for failure to meet the jurisdictional minimum even where plaintiff sought an additional $200,000 in punitive damages).

Construing McClean's Complaint as alleging a probate claim, the District Court still does not have subject matter jurisdiction. "The probate exception to subject matter jurisdiction provides that "probate matters are excepted from the scope of federal diversity jurisdiction, even where diversity of citizenship and the amount in controversy requirements are satisfied." *Cadwell v. Citibank, N.A.*, No. 23-CV-1315, 2023 WL 9492396, at *3 (S.D.N.Y. Dec. 26, 2023) (cleaned up). To determine if the probate exception applies, Courts consider whether the plaintiff seeks to (1) "administer an estate, probate a will, or do any other purely probate matter" or (2) "reach a *res* in the custody of a state court." *Lefkowitz v. Bank of N.Y.,* 528 F.3d 102, 106 (2d Cir. 2007). Here, McClean is suing McCarthy for $13,306.00, which he claims she

has because she is the "Executor of Carl Timm's estate." (Complaint, Dkt. 1, pg. 5, at ¶6). The only rational reading of the Complaint entails requiring McCarthy to administer Timm's will in the manner McClean requires. Surely, that falls into the "do any other purely probate matter" category. *Cf. Matter of Est. of Linich*, 213 A.D.3d 1, 3(3d Dept. 2023) ("Whether to dismiss a party's objections and admit the challenged will to probate is a matter committed to the sound discretion of Surrogate's Court . . ."). So the District Court does not have jurisdiction to hear this case.

* * *

The District Court should not allow McClean to amend his Complaint. Generally, before courts dismiss a *pro se* complaint or any part of the complaint on its own, they should afford the plaintiff the opportunity to amend at least once; but leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with a plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Here, there is futility because no

amendment will change the fact that the District Court cannot hear probate claims. Likewise, no amendment will change the specific amount of money McClean is allegedly entitled to, and that McClean is legally unable to obtain punitive damages. Thus, the Court recommends finding futility.

## V. CONCLUSION

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that McClean's motion to proceed *IFP* (Dkt. 4) is **GRANTED;** and it is further

**RECOMMENDED,** that McClean's Complaint should be **DISMISSED WITHOUT PREJUDICE** and **WITHOUT LEAVE TO AMEND** because the District Court lacks subject matter jurisdiction.

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: October 16, 2025.

_____

Hon. Mitchell J. Katz
U.S. Magistrate Judge

Cadwell v. Citibank, N.A., Not Reported in Fed. Supp. (2023)

Case 5:25-cv-01237-AMN-MJK    Document 8    Filed 10/16/25    Page 11 of 54

2023 WL 9492396
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jason N. CADWELL, et al., Plaintiffs,

v.

CITIBANK, N.A., Defendant.

23-CV-1315 (GHW) (KHP)
|
Signed December 26, 2023

**Attorneys and Law Firms**

Aytan Yehoshua Bellin, Katsky Korins LLP, New York, NY, for Plaintiffs.

Benjamin Reed Zakarin, Barclay Damon LLP, New York, NY, Donald E. Frechette, Locke Lord LLP, Hartford, CT, for Defendant Citibank, N.A.

Hannah Chapman Waite, Sheehey, Furlong & Behm, Burlington, VT, Jacqueline Carmen Gerrald, McLaughlin and Stern, LLP, New York, NY, John M. Brickman, McLaughlin & Stern LLP, Garden City, NY, for Defendants Dianne Stebbins, Susan Griffis, Martha Deeds, Jennifer Huff, Elizabeth MacKenzie, Edward A. Deeds, Jr.

<u>**REPORT AND RECOMMENDATION**</u>

KATHARINE H. PARKER, United States Magistrate Judge

**\*1  TO: THE HONORABLE GREGORY H. WOODS, United States District Judge**

**FROM: KATHARINE H. PARKER, United States Magistrate Judge.**

Jason N. Cadwell and Harold B. Findlay ("Plaintiffs") brought this action against Citibank, N.A. ("Citibank") and Edward A. Deeds, III, Martha Deeds, Susan Deeds Griffis, Jennifer Deeds Huff, Elizabeth Deeds MacKenzie, and Dianne Deeds Stebbins, (collectively, the "Individual Defendants") to resolve a dispute over assets contained in two ancestral trusts. Plaintiffs, co-trustees of a decedent's trust, seek an order declaring the decedent's exercise of a limited power of appointment was valid and directing Citibank to transfer assets from the two ancestral trusts to the decedent's trust. The Individual Defendants allege the proposed transfer is contrary to the decedent's intent and the law governing the valid exercise of a limited power of appointment. Citibank takes no position on the validity of the proposed transfer but seeks resolution of any competing claims – and an accounting of the ancestral Trusts in state court – before moving the assets. The Individual Defendants have moved to dismiss the First Amended Complaint ("FAC") for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs have moved for summary judgment.

For the reasons set forth below, I respectfully recommend that the Motion to Dismiss be DENIED and the Motion for Summary Judgment be GRANTED in part and DENIED in part.

**BACKGROUND**

This action involves a dispute between a decedent's widow and his children over the effectiveness of the decedent's intention to establish a Trust for the benefit of his widow using funds from two ancestral Trusts under which the children, the Individual

Defendants, would otherwise be the remainder beneficiaries. Plaintiffs are the Co-Trustees of the Edward A. Deeds Revocable Trust dated December 23, 1999, as amended (the "Grandson Trust"). (FAC at ¶ 2.) Citibank is the Trustee of the Edward A. Deeds Trust under a Trust Agreement dated March 1, 1945 and the Trustee of the Edith W. Deeds Trust under a Trust Agreement dated March 1, 1945 (collectively the "Grandparent Trusts"). (FAC at ¶ 4.) Edward A. Deeds (the "Grandson") was the son of Charles W. Deeds and the grandson of Edward A. Deeds and Edith W. Deeds. (FAC at ¶ 6.) During his lifetime, and following the death of his father, the Grandson was a beneficiary of the Grandparent Trusts, which each created separate trusts for the Grandson's benefit. (FAC at ¶ 22.) Both of the Grandparent Trusts granted a limited power of appointment to the Grandson over the assets held in the separate trusts for his benefit, and for alternative disposition of the assets of each trust should the Grandson not exercise that limited power of appointment. (FAC at ¶ 23.) In the event that the Grandson did not exercise his limited power of appointment, the Grandson's children (the Individual Defendants in this action) would be entitled to the assets in those trusts as the contingent remainder beneficiaries. (FAC at ¶ 25.)

**\*2** On February 28, 2022, the Grandson, then a resident of Vermont, died. (FAC at ¶ 20.) By order of the Vermont Superior Court, Probate Division (the "Vermont Probate Court"), the Last Will and Testament of the Grandson ("the Will") was admitted to probate and his wife, Birgit N. Deeds ("Ms. Deeds") was appointed Executor of his estate. (FAC at ¶ 21.) The Will was admitted, allowed without objection from all interested parties, and authenticated by the Vermont Probate Court. (ECF No. 54-6.) The Will contained two provisions, Sections 3(a) and 3(b), wherein the Grandson purportedly exercised his limited power of appointment in favor of the Co-Trustees of the Grandson Trust. (FAC at ¶¶ 26-27.) Section 3.2(a) of the Grandson Trust, in turn, contains a provision specifying that assets received from the Grandparent Trusts shall "[be held by the Trustees of the Grandson Trust] in a separate and distinct Trust for Birgit's benefit ... this Trust shall be known as the Birgit N. Deeds Trust I." (FAC at ¶ 28.)

On October 19, 2022, Ms. Deeds, as Executor, moved the Vermont Probate Court for an order directing Citibank to transfer the assets in the Grandparent Trusts for the benefit of the Grandson to the Plaintiffs in their capacity as Co-Trustees of the Grandson Trust. (FAC at ¶ 38.) The request was styled as a motion to disgorge trust assets and to cease and refund management fees. (ECF No. 28-7.) On November 7, 2022, the Vermont Probate Court granted the motion and issued an order directing the transfer of the funds held in the two Grandparent Trusts administered by Citibank. (FAC at ¶ 40.) This action was commenced on February 15, 2023, initially seeking an order directing Citibank to turn over the assets contained in the Grandparent Trusts to the Co-Trustees of the Grandson Trust. (ECF No. 1 at ¶ 35.) On May 09, 2023, the Vermont Probate Court rescinded its November 7 order after Citibank objected to the Vermont court's exercise of jurisdiction over the New York-based Grandparent Trusts. (ECF No. 53-9.) The Vermont Probate Court took notice of the proceedings in this Court and dismissed its own proceedings on the ground of *forum non conveniens.* (*Id.*) Citibank has taken no position on the validity of the Grandson's exercise of his limited power of appointment but has refused to transfer any assets until a Court resolves the competing claims to the assets, or in the alternative, until the Individual Defendants sign releases permitting Citibank to make the transfer. (ECF No. 62.) Further, Citibank has indicated that it is pursuing its statutory right to an accounting of the Grandparent Trusts pursuant to New York's *Surrogate's Court Procedure Act* ("SCPA") § 2208.

Plaintiffs seek an order declaring that the Grandson properly exercised his limited powers of appointment as provided by the Grandparent Trusts, and directing Citibank, as Trustee of the Grandparent Trusts, to turn over the assets in the two trusts to the Plaintiffs in their capacity as Co-Trustees of the Grandson Trust. The Individual Defendants argue that the Grandson failed to properly exercise his limited powers of appointment because he appointed the assets to the Co-trustees of the Grandson Trust for the benefit of his spouse, rather than simply outright to his spouse, Ms. Deeds. If the Court found that the exercise of the limited power of appointment was ineffective, that would leave the Individual Defendants entitled to the assets contained in the Grandparent Trusts as the remainder beneficiaries. Although the Individual Defendants did not dispute the Will's admission to probate, they argue that the Will's provisions could have resulted from Ms. Deed's "undue influence" over the Grandson and that they require discovery to determine the Grandson's intentions and capacity when executing the Will. (ECF No. 69 at 6.)

Case 5:25-cv-01237-AMN-MJK   Document 8   Filed 10/16/25   Page 13 of 54

Cadwell v. Citibank, N.A., Not Reported in Fed. Supp. (2023)

## LEGAL STANDARD

### 1. Rule 12(b)(1)

Federal courts have the inherent power under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss claims over which it lacks subject matter jurisdiction. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *McIntosh v. United States*, 2018 WL 1275119, at \*4 (S.D.N.Y. Mar. 7, 2018) (quoting *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014)). "A claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison*, 547 F.3d at 170.

 **\*3**  On a Rule 12(b)(1) motion, the plaintiff who invokes the Court's jurisdiction bears the burden of proof to demonstrate that jurisdiction exists. *McIntosh*, 2018 WL 1275119, at 3-4. If the court determines that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3). In resolving a motion to dismiss under Rule 12(b)(1), the district court must "take all uncontroverted facts in the complaint (or petition) as true and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). The Court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record, including state court filings." *Kumpf v. New York State United Tchrs.*, 642 F. Supp. 3d 294, 304 (N.D.N.Y. 2022) (citations omitted).

### 2. The Probate Exception to Diversity Jurisdiction

The federal courts have subject matter jurisdiction over an action between citizens of different states where the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332. The "probate exception" is a historical aspect of subject matter jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction, even where diversity of citizenship and the amount in controversy requirements are satisfied. *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 105 (2d Cir. 2007); *see generally Marshall v. Marshall*, 547 U.S. 293 (2006). To determine whether the probate exception applies, Courts evaluate whether the complaint seeks to (1) "administer an estate, probate a will, or do any other purely probate matter" *or* (2) "reach a *res* in the custody of a state court." *Lefkowitz*, 528 F.3d at 106 (internal quotation marks, alterations, and emphasis omitted). The probate exception does not apply to actions that, although "intertwine[d]" with the probate action, "seek[ ] damages from defendants personally rather than assets or distributions from [the] estate." *Pelczar v. Pelczar*, 833 F. App'x 872, 874–75 (2d Cir. 2020).

The first prong of the inquiry is "rarely violated," because "few practitioners would be so misdirected as to seek, for example, letters testamentary or letters of administration from a federal judge." *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002); *see also Abercrombie v. Andrew College*, 439 F.Supp.2d 243, 252 (S.D.N.Y. 2006) (quoting *Moser*, 294 F.3d at 340). For the second prong to apply, the relief sought must require the district court to "interfere with the probate proceedings, [ ] assume general jurisdiction of the probate[,] or control [ ] property in the custody of the state court." *Abercrombie*, 438 F. Supp. 2d at 252.

If there is no *res* currently under the jurisdiction of a state court, or the relevant property is not already part of the estate, then the second prong of the probate exception does not apply. *Id.* at 256. Therefore, the probate exception usually applies to claims in which a plaintiff seeks "in essence, a disgorgement of funds that remain under the control of the Probate Court," but not to claims in which a plaintiff seeks "damages from defendants personally rather than assets ... from [an] estate," such as claims of breach of fiduciary duty or other tort claims. *Fisch v. Fisch*, 2014 WL 5088110, at \*3 (S.D.N.Y. Sept. 23, 2014). Similarly, claims brought "by estate administrators or executors to add assets to an estate that were not part of the estate at the time of the decedent's death" are routinely found to be outside the bounds of the probate exception. *Bollenbach v. Haynes*, 2019 WL 1099704, at \*4 (S.D.N.Y. Mar. 8, 2019)(collecting cases).

### 3. *Colorado River* Abstention

Case 5:25-cv-01237-AMN-MJK   Document 8   Filed 10/16/25   Page 14 of 54

Cadwell v. Citibank, N.A., Not Reported in Fed. Supp. (2023)

**\*4**  In the alternative to dismissing the First Amended Complaint under Rule 12(b)(1), the Individual Defendants suggest the Court should abstain from exercising jurisdiction under the *Colorado River* doctrine. (ECF No. 47 at 7). Under *Colorado River,* a federal court may abstain from exercising jurisdiction in "exceptional circumstances" where "parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,* 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 818 (1976)).

Before engaging in the multi-factor *Colorado River* abstention analysis, a court must make a threshold determination that there are "parallel" federal and state court cases. *Dittmer v. County of Suffolk,* 146 F.3d 113, 118 (2d Cir. 1998) ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*"). Federal and state proceedings are "parallel" for abstention purposes when there are two proceedings that "are essentially the same," meaning that "there is an identity of parties, and the issues and relief sought are the same." *Shields v. Murdoch,* 891 F.Supp.2d 567, 577 (S.D.N.Y. 2012) (citation and internal quotation marks omitted).

### 4. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating, on one or more required elements of the plaintiff's claims, "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "resolve any doubts and ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Johnson v. L'Oreal USA,* 2023 WL 2637456, at \*3 (2d Cir. Mar. 27, 2023) (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will preclude a grant of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Summary judgment should only be granted "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " *Berger v. United States,* 87 F.3d 60, 65 (2d Cir. 1996) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)) (alteration in original). Only in the "rarest of cases" may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery. *See Hellstrom v. U.S. Dep't of Veterans Affs.,* 201 F.3d 94, 97 (2d Cir. 2000). Where the issues are limited to questions of law, such as the interpretation of unambiguous contracts, summary judgment may be appropriate without discovery. *Schanker & Hochberg, P.C. v. Berkley Assurance Co.,* 589 F. Supp. 3d 281, 296 (E.D.N.Y. 2022)(collecting cases), *see also Segreto v. Kirschner,* 977 F. Supp. 553, 556 (D. Conn. 1997)("In a summary judgment context, an opposing party's hope that further evidence may develop is an insufficient basis upon which to deny a motion.")

### DISCUSSION

There is no dispute here that parties are citizens of different states, nor whether there is substantially more than $75,000 in controversy. Therefore, for the purposes of Rule 12(b)(1) analysis, the only issue is whether the probate exception to otherwise valid diversity jurisdiction deprives the Court of subject matter jurisdiction.

### 1. The Probate Exception

**\*5**  The probate exception has been subject to a variety of misunderstandings and adjustments throughout its history. In this Circuit, the exception was initially broadly construed to apply to matters incidentally but not directly related to the administration of an estate. *See Moser,* 294 F.3d at 340 (holding that adjudication of claims for fraudulent concealment would "interfere with probate proceedings"). The Supreme Court has since clarified that the exception deprives a federal court of jurisdiction only where the complaint seeks to "administ[er] an estate, ... probate ... a will, or [do] any other *purely* probate matter" or to "reach a res in the custody of a state court." *Lefkowitz,* 528 F.3d at 106 (quoting *Marshall,* 547 U.S. at 309.) Therefore, the

federal courts retain their jurisdiction where parties seek a judgment that does not dispose of property in the custody of a state probate court, even if the judgment may be intertwined with and binding on state proceedings. *Id.*

*a. Plaintiffs Do Not Seek to Probate the Will or Administer the Estate*

Since the Will in this case was already admitted to probate and an administrator was appointed without objection, there is no probate proceeding to interfere with. (*See* ECF No. 54-6.) Plaintiffs here do not seek "letters testamentary or letters of administration" typical of the "rare" application of the first prong of the probate exception. *See Moser,* 294 F.3d 335, 340 (2d Cir. 2002). Plaintiffs also do not seek an order that the court "monitor" trust distributions or interfere with assets already contained within the probated estate. *C.f. Woitowicz v. Schoenfeld,* 2022 WL 17979571, at *3 (S.D.N.Y. Dec. 28, 2022)*, reconsideration denied, 2023 WL 171893 (S.D.N.Y. Jan. 12, 2023)* (dismissing one claim, for continuous monitoring of trust assets, on the basis of the first prong of the probate exception).

Instead, Plaintiffs seek an order enforcing the Grandson's intent to exercise his limited power of appointment over assets in the Grandparent Trusts, as provided in his already admitted Will. While such a judgement could be "intertwined with and binding on" any subsequent accounting proceeding in Surrogate's Court, as the Individual Defendants imply without explanation, that does not render Plaintiff's cause of action a "purely probate matter." The Vermont Probate Court apparently had the same understanding, as it dismissed its further proceedings on disgorgement of the Grandparent Trusts' assets after learning about this action in federal court.

The Individual Defendants' citations to *Mercer v. Bank of New York Mellon, N.A.*, 2014 WL 3655657, (E.D.N.Y. July 21, 2014) and *Kennedy v. The Trustees of the Testamentary Trust of the Last Will of Kennedy,* 406 Fed. Appx. 507 (2d Cir. 2010) are inapposite. In *Mercer,* the relief sought was "not simply .. an adjudication of [Plaintiff's] entitlement to a portion of the Trust funds ... but [ ] asking the District Court to undo specific actions already taken by the trustees during the period of probate administration." *Mercer v. Bank of New York Mellon, N.A.,* 609 F. App'x 677, 680 (2d Cir. 2015). Further, the Trust at issue was already being administered by the Surrogate's Court while subject to an accounting, and the requested relief could not "be maintained if another court is already exercising control over the trust." *Id.* In *Kennedy,* the Court was evaluating claims against a testamentary trust being administered by a state probate court. 406 Fed. App'x at 509 (dismissing claims seeking distributions from trust assets). Even then, it maintained jurisdiction "to adjudicate rights in [trust] property where the final judgment does not undertake to interfere with the state court's possession." *Id.*

Here, the Vermont Probate Court decided both that the Will was valid and that it lacked jurisdiction over the Grandparent Trusts in favor of this litigation. In short, the probate of the Will is already complete, which precludes the Individual Defendants' arguments that challenge the validity of the Will and those invoking the first prong of the probate exception. *See Marcus v. Quattrocchi,* 715 F. Supp. 2d 524, 533 (S.D.N.Y. 2010) (finding the first prong of the probate exception cannot apply where the relevant will was already admitted to probate without objection.). Thus, the first prong of the probate exception does not apply.

*b. No State Court Has Asserted Jurisdiction Over the Grandparent Trusts*

**\*6** The Individual Defendants argue that the second prong of the probate exception also applies because Plaintiffs seek an order requiring the Court assert *in rem* jurisdiction over a *res* already under the control of a State Court. They also argue that this second prong is broad enough to apply in situations where courts must assert *quasi in rem* jurisdiction over a *res*, citing to dicta contained in *Princess Lida of Thurn & Taxis v. Thompson,* 305 U.S. 456, 466-67 (1938), as quoted in *Mercer,* 609 Fed. Appx. at 679.

Plaintiffs disagree and argue that the second prong of the probate exception does not apply because: a) the Vermont Probate Court proceedings have concluded; b) the Vermont Probate Court rescinded its order that Citibank disgorge the trust assets on the ground of *forum non conveniens* after being notified of this action*; and* c) neither the Vermont Probate Court nor any other court has exercised jurisdiction over the Grandparent Trusts. In other words, the *res* targeted by the FAC is not "in the custody of a state court." Plaintiffs are correct.

Case 5:25-cv-01237-AMN-MJK   Document 8   Filed 10/16/25   Page 16 of 54

Cadwell v. Citibank, N.A., Not Reported in Fed. Supp. (2023)

In the cases cited by the Individual Defendants, unlike here, the trusts at issue were already subject to the *in rem* jurisdiction of a state court. *See e.g., Mercer,* 2014 WL 3655657, at *3 (E.D.N.Y. July 21, 2014), aff'd, 609 F. App'x 677 (2d Cir. 2015) (Surrogate's Court was conducting accounting proceeding for testamentary trust); *Kennedy,* 406 F. App'x 507, 509 (2d Cir. 2010) (distribution claim against testamentary trust being administered by state court was subject to probate exception); *Woitovich,* 2022 WL 17979571, at *3-4 (administrator appointed by state court retained state court jurisdiction over the trust at issue). In this case, Plaintiffs are requesting that the Grandparent Trusts' assets, currently outside the jurisdiction of the Vermont Probate Court, *bypass probate entirely* and be added to the Grandson Trust. Even the Individual Defendants are seeking to bypass the estate and disburse the Grandparent Trusts' assets to themselves as the remainder beneficiaries. In other words, no party is seeking to move assets out of an estate, the typical scenario when the probate exception would apply. And, even if the Court were to view this action as an attempt to add assets to the decedent's estate that were not part of the estate at the time of his death, as would be the case here, such efforts fall "outside the bounds of the probate exception." *Bollenbach v. Haynes,* 2019 WL 1099704, at *4 (S.D.N.Y. Mar. 8, 2019)(collecting cases). The probate exception similarly does not apply when a suit is brought by the administrator of an estate to add property to an estate or trust. *See Marcus,* 715 F. Supp. 2d at 534 (noting, "requests to return property to an estate or trust, rather than to dispose of property currently part of an estate or trust, do not fall within the probate exception because the *res* at issue is not within the probate court's jurisdiction if it is not part of the estate at the time of the decedent's death.").

The Individual Defendants argue that even if the Vermont Probate Court never exercised jurisdiction over the Grandparent Trusts, the probate exception applies when a federal court must assert *quasi in rem* jurisdiction in a suit to "marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature." *See Mercer,* 609 F. App'x at 679 (*quoting Princess Lida,* 305 U.S. at 466-67). This reads too much into *Mercer* and is at odds with other cases holding that the probate exception is limited. *Marshall,* 547 U.S. at 298; *Lefkowitz,* 528 F.3d at 106. Further, as discussed above, in *Mercer,* the Surrogates Court had asserted jurisdiction over the relevant trust in an accounting proceeding whereas here, no state probate court has asserted jurisdiction over the Grandparent Trusts. [1] *Mercer,* 2014 WL 3655657, at *3. Thus, this case is distinguishable from *Mercer*. Similarly, in *Princess Lida*, another case relied on by the Individual Defendants, the court merely recognized that "the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other." *Princess Lida,* 305 U.S. at 466 (declining jurisdiction where first-filed proceeding was in Common Pleas Court); *see also Black v. Dain,* 2017 WL 11696660, at *9 (Probate court was administering underlying estate).

**\*7** Therefore, the second prong of the probate exception does not apply.

### 2. *Colorado River* Abstention

When clarifying the scope of the probate exception in *Marshall v. Marshall*, the Court began by quoting Chief Justice Marshall cautioning, "it is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should." *Marshall,* 547 U.S. at 298. The Individual Defendants nonetheless suggest that even if the probate exception does not apply, this Court in its discretion should abstain under *Colorado River*. This argument is not persuasive because the only possible parallel state court action they can point to is the discontinued action in Vermont Probate Court. Once the Vermont Probate Court rescinded its previous order on the ground of *forum non conveniens*, the existence of a parallel state action ceased and the threshold inquiry for *Colorado River* cannot be satisfied. *See Marcus,* 715 F. Supp. 2d at 537 (finding there is "no reason" to abstain under *Colorado River* where the allegedly parallel proceeding was dismissed); *Conn. Fund for Env't, Inc. v. Upjohn Co.,* 660 F.Supp. 1397, 1405 n. 10 (D. Conn. 1987) ("The conclusion of the parallel proceeding eliminates any need to discuss abstention.")

Therefore, I respectfully recommend that the Court DENY the Individual Defendants' Motion to Dismiss, as neither the probate exception nor *Colorado River* abstention principles apply.

### 3. Plaintiffs' Motion for Summary Judgment

Plaintiffs seek summary judgment on the grounds that the Grandson's exercise of his power of appointment was unambiguous and further discovery is unnecessary for this Court to interpret the language of the relevant trusts and Will and order Citibank to transfer the Grandparent Trusts' assets. The Individual Defendants oppose Plaintiffs' motion for summary judgment on three separate grounds: first, the probate exception deprives this court of jurisdiction; second there are genuine, material, issues of fact; and finally, the motion is premature because there has been no discovery. Citibank opposes the motion to the extent it interferes with its right to pursue a statutory accounting. Since I have explained above why the probate exception does not apply, the Individual Defendants' first argument is without merit. Accordingly, I address their other two arguments below.

### A. The Grandson's Exercise of His Limited Powers of Appointment is Unambiguous

It is hard to imagine more explicit exercises of a limited power of appointment than those contained in the Will. Sections 3(a) and 3(b) of the Will are titled, "Exercise of Power of Appointment for Edward A. Deeds Trust" and "Exercise of Power of Appointment for Edith W. Deeds Trust," respectively. Each section states, "I hereby exercise this limited power of appointment, and appoint the remaining principal of the separate trust created for my benefit under the [Edward A./Edith W.] Deeds Trust to the Trustees of the Trust Agreement described in Section 5 hereof, to be held, managed, and disposed of in accordance with the terms of Article 3 thereof." Further, Section 3.2(a) of the Grandson Trust emphasizes that the Grandson's exercise of his power of appointment was intentional. If the Grandson did not intend to exercise the power of appointment, why would the Grandson Trust *also* provide for the creation of the Birgit Deeds Trust "pursuant to the Donor's exercise in his will of certain limited powers of appointment." The Grandson Trust documents contain no qualifying language such as "*if the Donor should* exercise the power of appointment" – instead it uses the clear phrase "pursuant to Donor's exercise in his will." No linguistic canons are necessary to parse this language--the Grandson explicitly exercised his power of appointment in the Will in favor of the Grandson Trust for the benefit of his wife.

### B. The Grandson's Exercise Was Permitted By the Grandparent Trusts

**\*8** The Individual Defendants argue that the Grandson's exercise of his limited power of appointment in favor of a Trust for Ms. Deeds' benefit, rather than to Ms. Deeds' outright, rendered the appointment ineffective. However, the Grandparent Trusts are governed by New York law, which recognizes that the exercise of a power of appointment in favor a trust for the benefit of an individual, rather than to the individual outright, is nonetheless a proper exercise of the power of appointment. *See, e.g., In re Nicholas's Will*, 284 A.D. 971, 971-72 (2d Dept. 1954) (exercise of power of appointment in favor of trust rather than outright to class of possible recipients held proper); *In re Hart's Will*, 262 A.D. 190, 191-95 (1st Dept. 1941) (same); *In re Reynal's Will*, 58 Misc.2d 518, 521-22 (Surr. Ct. Dutchess County 1968) (same). The Grandson's choice to appoint the assets in further trust for the benefit his spouse, rather than to his spouse outright, is consistent with (and less extensive than) the power provided in the Grandparent Trusts to "pay over the remaining principal thereof to ... his spouse." (FAC at ¶ 23.) And notably, under the terms of the Grandson Trust, the remaining principal of the Birgit Deeds Trust will ultimately be paid to the Individual Defendants, which is similarly allowed by the Grandparent Trusts. *Id.;* (FAC at ¶ 28.)

### C. The Individual Defendants' Supposed Factual Issues Are Precluded by State Court Judgements

The Individual Defendants contend that discovery is needed to show, through extrinsic evidence, that the Will is invalid because the Decedent was subject to undue influence when drafting his Will or had a contrary intent than what is stated in the Will. However, their challenges to the Will are all barred by Vermont law. The Will was already admitted to probate, without objection, and with notice having been given to "all interested parties." (ECF No. 54-6.) The Individual Defendants conceded at oral argument that they did not contest the Will in the Vermont Probate Court. Although "an order of the [Vermont] probate division allowing a will addresses only a very specific set of issues," those issues include "did the testator have the requisite mental capacity; was the execution free from undue influence, fraud, or duress; and was the will properly witnessed." *In re Est. of Holbrook*, 2016 VT 13, ¶ 15, (2016). In short, by failing to timely challenge the Will in Vermont Probate Court, the Individual Defendants have already allowed a court of competent jurisdiction to decide that the Will was made by someone with the requisite mental capacity, free from undue influence or fraud, and was properly witnessed. This Court is not free to revisit these issues, as failure to appeal the order of the Vermont Probate Court renders the Will immune from collateral attack. *Id.* (quoting

*In re Est. of Perry,* 2012 VT 9, ¶ 9, 191 Vt. 589, 592, 39 A.3d 1060, 1063 (2012)). Any discovery sought on those issues would not be relevant to the outcome of this litigation.

Construing the Grandson and Grandparent Trusts' documents under New York Law, which the parties agree applies, the intention of the Donor should be determined by the "four corners of the [instrument] itself." *In re Chernik,* 150 A.D.3d 728, 729-30 (2d Dept. 2017). It is inappropriate to use extrinsic evidence to interpret an unambiguous expression of an intention to exercise a limited power of appointment contained in a will. *See Matter of Cord's Estate,* 58 N.Y.2d 539, 544, (1983); *McLean v. McLean,* 174 A.D. 152, 156, 160 N.Y.S. 949 (App. Div. 1916), aff'd, 223 N.Y. 695, 119 N.E. 1056 (1918) (finding that "contrary intent" to exercising a power of appointment must appear "expressly or by necessary implication" in the will.) The Individual Defendants' references to extrinsic evidence such as conversations about "keeping the [Grandparent Trusts' assets] in the Deeds family" are therefore irrelevant. [2] The only argument the Individual Defendants make regarding the Will's terms themselves is that "nearly all of his other assets were going to his wife." (ECF No. 69 at 5.) That fact is neither disputed, nor evidence of the Grandson's intention to leave the Grandparent Trusts' assets to his children immediately upon his death. It is just as likely evidence of the Grandson's intention for his wife, who he the appointed executor of his estate, to have the benefits she was accustomed to until she also passes away.

 **\*9**  Since the Individual Defendants are barred from offering extrinsic evidence of the Grandson's intent and have not advanced any arguments that the Will or Trust documents by their terms or "necessary implication" express a contrary intent, the question before the Court is a purely legal one. It is irrelevant that the Individual Defendants "believe discovery would reveal more information that are reasonably expected to create additional genuine issues of material fact." (ECF No. 69 at 8.) That belief both misunderstands the relevant law, as only the underlying documents are relevant, and is an insufficient basis to deny a motion for summary judgment. *See Segreto,* 977 F. Supp. at 556. Where, as here, the only role for the Court is construing legal documents, summary judgment is appropriate without further discovery. *See Chachkes v. David,* 2021 WL 101130, at \*6 (S.D.N.Y. Jan. 12, 2021)(granting summary judgment on issue of Trust Agreement interpretation pre-discovery)(collecting cases).

In sum, there is no material dispute of fact that precludes a finding that the Grandson validly exercised his limited power of appointment in the Will. Further, applicable law requires a finding that the Grandson did validly exercise his limited power of appointment when, in the Will admitted to probate, he directed the Grandparent Trusts' assets be transferred to the Grandson Trust to fund a Trust for Ms. Deeds' benefit. For these reasons, I recommend the Motion for Summary Judgment be GRANTED in part. As discussed below, I recommend that it be denied insofar as it seeks an order requiring immediate transfer of assets by Citibank.

### *D. Citibank's Right to an Accounting*

Citibank's interest in pursuing an accounting of the Grandparent Trusts' assets is reasonable, given both the age and value of assets in the trusts (which amount to millions of dollars). However, Citibank contends that the accounting will require the gathering and review of nearly 80 years of documents. (ECF No. 61 at 3 n1.) At oral argument, counsel for Citibank indicated that it may take an additional six to nine months to file the accounting in New York Surrogate's Court, with no prediction when the accounting might be complete. The parties suggest various different mechanisms whereby Citibank could retain a portion of the Grandparent Trusts' assets until the accounting is complete or issue a refund bond to the Co-Trustees of the Grandson Trust. However, on the record currently before the Court, it is impossible to determine how to balance the competing interests of Plaintiffs' right to receive the Grandparent Trusts' assets and Citibank's right to reasonable fees for completing the accounting.

Therefore, I respectfully recommend that the Motion for Summary Judgment be DENIED without prejudice insofar as it seeks an order requiring Citibank to transfer assets at this time. Instead, the parties should be required to submit additional evidence and briefing on the anticipated funds required to complete the accounting and how any portion of the Grandparent Trusts' assets might be transferred before the accounting is complete.

Case 5:25-cv-01237-AMN-MJK   Document 8   Filed 10/16/25   Page 19 of 54

Cadwell v. Citibank, N.A., Not Reported in Fed. Supp. (2023)

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Individual Defendants' Motion to Dismiss the First Amended Complaint for lack of subject matter jurisdiction be DENIED and that Plaintiffs' Motion for Summary Judgment be GRANTED in part and DENIED in part.

## NOTICE

**Parties shall have fourteen days from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P. 72(b)(2).**

**\*10  Parties shall have fourteen days to serve and file any response. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Gregory H. Woods at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Woods. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 9492396

## Footnotes

1    In *Mercer*, the accounting proceeding was filed on the same day that defendants objected to a report and recommendation on a motion to dismiss. The Court noted that the objections triggered *de novo* review of whether the probate exception applied. The court found that the probate exception applied and was divested of jurisdiction upon the commencement of the accounting action. *Mercer*, 2014 WL 3655657, at *3. At the December 19, 2024 Oral Argument, counsel for Citibank indicated that they would not be prepared to file for an accounting until "the third quarter of 2024." In other words, no accounting has been filed or will be imminently filed, underscoring the point that no state court has exercised jurisdiction over the *res*.

2    Under the terms of the proposed Birgit Deeds Trust, as provided for in the Grandson Trust, upon the death of Ms. Deeds, the remainder of the Grandparent Trust assets would still pass on to the Individual Defendants. FAC at ¶ 28.

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 865822
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Francis CARLING, Plaintiff,

v.

Kristan PETERS, Defendant.

No. 10 Civ. 4573(PAE)(HBP).
|
Feb. 6, 2013.


*REPORT AND RECOMMENDATION*

PITMAN, United States Magistrate Judge.

**\*1**  TO THE HONORABLE PAUL A. ENGELMAYER, United States District Judge,


I. *Introduction*

Plaintiff Francis Carling commenced this diversity action against defendant Kristan Peters for fraud and breach of contract arising out of Peters' failure to pay Carling for legal services he provided to her. In his Second Amended Complaint (the "SAC") (Docket No. 214), Carling seeks a total of $41,750 in compensatory damages. He also seeks punitive damages on both claims for relief.

By an order dated May 30, 2012, I directed Carling to show cause why this action should not be dismissed for lack of subject matter jurisdiction (Docket No. 213). In response to the May 30 Order, Carling submitted a motion for partial summary judgement (Docket No. 215), and Peters submitted a motion to dismiss the SAC (Docket No. 225).

For the reasons stated below, I respectfully recommend that the SAC be dismissed for lack of subject matter jurisdiction and that Carling's motion for partial summary judgment and Peter's motion to dismiss be denied as moot.


II. *Background*

A. *Facts*

Carling is a citizen of New York and a lawyer admitted to practice in New York and Connecticut (SAC ¶ 2). Peters is citizen of Connecticut and is also a lawyer admitted to practice in New York and Connecticut (SAC ¶ 3). Both parties have substantial professional legal experience and were partners at major New York law firms (SAC ¶¶ 6–7).

This case has its origins in another case formerly pending in this district, *Wolters Kluwer Financial Services Inc. v. Scivantage, et al.,* 07 Civ. 2352(HB), in which Wolters Kluwer alleged that three former employees had misappropriated trade secrets and were using those secrets to compete unfairly (SAC ¶ 8). Peters represented Wolters Kluwer in that action (SAC ¶ 8). Though the claims in *Wolters Kluwer* were ultimately settled, the Honorable Harold Baer, United States District Judge, sanctioned Peters for twenty-two ethical lapses and instances of misconduct; the sanctions were non-monetary and limited to a public reprimand (SAC ¶ 10). *Wolters–Kluwer Fin. Servs. Inc. v. Scivantage,* 525 F.Supp.2d 448 (S.D.N.Y.2007), *aff'd in part, rev'd in part,* 564 F.3d 110 (2d Cir.2009).

Peters appealed from Judge Baer's Opinion and Order imposing sanctions (SAC ¶ 11). On July 14, 2008, Peters retained Carling to argue the appeal (SAC ¶¶ 17–20, 25) and, according to Carling, to perform other legal work (SAC ¶¶ 34–37). During the course of the parties' initial discussion concerning Peters' appeal, Carling alleges that Peters made numerous misrepresentations and failed to disclose a number of facts concerning her professional history and career and her conduct in the Wolters Kluwer litigation (SAC ¶ 18). For example, he alleges that Peters falsely stated that the findings of misconduct by Judge Baer were baseless and that she "had a spotless record as a litigator, and always practiced law ethically" (SAC ¶¶ 18(g),(i)). According to Carling, had he known the truth about Peters' professional history, he would not have agreed to represent her (SAC ¶¶ 19, 24). He further alleges that had Peters "disclosed to [him] that she was not accustomed to paying lawyers in full for their services, he would never have agreed to represent her" (SAC ¶ 20).

**\*2** At the time that Carling agreed to represent Peters, he was "of counsel" to the law firm formerly known as Collazo Carling and Mish LLP (the "Collazo Law Firm") (SAC ¶ 14). [1] Carling and Peters agreed that the Collazo Law Firm would be counsel of record for the sanctions appeal and, accordingly, executed a retainer agreement on the firm's letterhead (SAC ¶ 28–30). Carling and Peters agreed that Carling would bill his time at $500 per hour and record his time in increments of tenths of an hour (SAC ¶¶ 26, 29). Carling agreed to bill Peters at the end of each month, and Peters agreed to pay these bills promptly and in full (SAC ¶¶ 26, 29). The total outstanding amount billed by the Collazo Law Firm to Peters was $27,000.60 (SAC ¶ 58). Carling alleges that Peters deliberately misrepresented her intention to pay these bills (SAC ¶ 54).

Carling also alleges that Peters requested that he represent her in disciplinary matters in the Southern and Eastern Districts of New York, in the District of Connecticut and before the Connecticut State Bar (SAC ¶ 35). In addition, Carling alleges that Peters asked Carling to assist her in a Minnesota litigation against her former firm related to the fees owed in the Wolters Kluwer case (SAC ¶ 35). Carling alleges that he and Peters agreed to a separate billing arrangement for these matters under which Carling, not the Collazo Law Firm, would directly bill her (SAC ¶ 39). Carling claims that there is a total of $11,850 in unpaid legal bills arising out of these other matters (SAC ¶ 40).

The parties' relationship ultimately disintegrated and on December 19, 2008, Carling terminated his attorney-client relationship with Peters based on "her dishonesty in her dealings with him" (SAC ¶ 47). Carling alleges that Peters told him at this time "that he should not bother to pursue her for unpaid fees, because if he did she would employ litigation tactics that would require him to devote additional time to any litigation, and incur out-of-pocket costs, far in excess of the value of the fees sought" (SAC ¶ 86).

The Collazo Law Firm initiated an arbitration proceeding against Peters to resolve the outstanding legal fees (SAC ¶ 62). The Arbitrator issued a decision and award for $33,801 in legal fees in favor of the Collazo Law Firm (SAC ¶ 63). Peters filed a motion to vacate the award in New York State Supreme Court (SAC ¶ 64). On January 12, 2012, the New York State Supreme Court confirmed the award, but, according to Carling, Peters has failed to pay the award (SAC ¶ 65).

Carling also alleges that Peters has made numerous false statements of fact to courts in the course of this action, as well as in other litigations (SAC ¶¶ 69–83). He also alleges that Peters has used evasive and dilatory litigation tactics against him in order to prevent him from collecting any of the outstanding fees and to run up his litigation costs (SAC ¶¶ 86–92).

B. *Procedural History*

**\*3** Carling commenced this action against Peters on June 6, 2010 (Docket No. 1). He brought claims for fraud, breach of contract, quantum meruit, negligence *per se,* defamation and breach of the covenant of good faith and fair dealing. His original complaint sought both compensatory and punitive damages, including $150,000 in compensatory damages on his fraud claim (Docket No. 1). Carling amended his complaint on July 20, 2010 (Docket No. 5). Peters moved to dismiss the amended complaint for lack of subject matter jurisdiction and failure to state a claim (Docket No. 15). On September 15, 2010, the Honorable Victor Marrero, United States District Judge, to whom this matter was then assigned, denied Peters' motions to dismiss (Docket No.

24). Because Judge Marrero issued a summary order after an unrecorded oral argument, there is no record of the grounds for his denial of the motion.

Peters answered Carling's amended complaint and asserted counterclaims for extortion, fraud, breach of contract, fraudulent inducement, misrepresentation, negligent inducement, fraudulent misrepresentation, negligence *per se,* breach of the duty of good faith and fair dealing, attempted extortion and tortious interference with business relations all arising out of Carling's representation of Peters (Docket No. 45). Peters sought both compensatory and punitive damages (Docket No. 45). Carling moved to dismiss the counterclaims (Docket No. 50), and in a Report & Recommendation dated March 30, 2012, I recommended that Peters' extortion, attempted extortion, fraudulent inducement, misrepresentation, fraudulent misrepresentation and negligence *per se* claims be dismissed (Docket No. 182 at 29). [2]

On May 3, 2012, Carling moved for leave to file a second amended complaint (Docket No. 194). I granted that motion on May 30, 2012 (Docket No. 213). In addition, because there was serious doubt as to whether there was any claim in the case that could support an award of damages in excess of $75,000, I ordered Carling to show cause why this action should not be dismissed for lack of subject matter jurisdiction. On May 31, 2012, Carling filed the SAC which asserts two claims: (1) fraud and (2) breach of contract/account stated (Docket No. 214). In the SAC, Carling reduced his demand for compensatory damages to $41,750 on the fraud claim and $11,850 on the breach of contract claim (SAC ¶¶ 93–117) Carling also seeks punitive damages on both claims (SAC ¶ ¶ 102, 116–17).

In response to the May 30 Order, Carling filed a motion seeking summary judgment on his breach of contract claim and a ruling that punitive damages are available as a matter of law on both of his claims (Docket No. 215). Peters filed an opposition to this motion on June 28, 2012 (Docket No. 228). In addition, she filed a motion to dismiss the SAC on June 20, 2012 (Docket No. 225). Carling has not filed a separate response to this motion, but filed a reply brief on June 29, 2012 that addressed Peter's motion to dismiss (Docket No. 230).

### III. *Analysis*

#### A. *Legal Standard*

**\*4**  "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374 (1978), *accord Pucci v. Brown,* 423 F. App'x 77, 77 (2d Cir.2011). Federal courts, other than the United States Supreme Court, have only the subject matter jurisdiction that Congress confers upon them. "[S]ubject-matter jurisdiction cannot be waived and the issue can be raised at any time in the course of litigation." *Tongkook America, Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 786 (2d Cir.1994), *citing* Fed.R.Civ.P. 12(h)(3). "If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte." Durant, Nichols, Houston, Hodgson & Cortese–Costa P.C. v. Dupont,* 565 F.3d 56, 62–63 (2d Cir.2009), *citing Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152 (1908). The party asserting subject matter jurisdiction bears the burden of proving that it exists. *Hertz Corp. v. Friend,* 559 U.S. 77, ——, 130 S.Ct. 1181, 1194 (2010); *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000); *United Food & Commercial Workers Union, Local 919, AFL–CIO v. Centermark Props. Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994).

In 28 U.S.C. § 1332, Congress conferred upon the District Courts the power to hear cases in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a)(1). Diversity jurisdiction has two elements. First, all the plaintiffs must be of diverse citizenship from all the defendants. *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 89 (2005); *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 553 (2005). Second, the amount in controversy must exceed $75,000. The only issue in this action is whether the second element of diversity jurisdiction is present.

A court ordinarily "measure[s] the amount in controversy as of the date of the complaint. Once jurisdiction has attached, it cannot be ousted by subsequent events." *Scherer v. Equitable Life Assurance Soc'y of U.S.,* 347 F.3d 394, 397 (2d Cir.2003).

"[T]he party invoking federal jurisdiction must show by a 'reasonable probability' that the amount-in-controversy requirement is satisfied ...." *Colavito v. New York Organ Donor Network, Inc.,* 438 F.3d 214, 221 (2d Cir.2006), *quoting Tongkook America, Inc. v. Shipton Sportswear Co., supra,* 14 F.3d at 784. There is, however, a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 63 (2d Cir.1999). "To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Scherer v. Equitable Life Assurance Soc'y of U.S., supra,* 347 F.3d at 397, *quoting St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89 (1938). "The jurisdictional determination is to be made on the basis of the plaintiff's allegation, not on a decision on the merits" and "even where those allegations leave grave doubt about the likelihood of recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir.1982). In resolving a dispute concerning the jurisdictional amount, a court "must accept as true all material factual allegations in the complaint" but does not "draw inferences from the complaint favorable to [the] plaintiff[ ]." *J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir.2004). "It is [ ] well established that when the question is subject matter jurisdiction, the court is permitted to rely on information beyond the face of the complaint." *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply,* 409 F.3d 73, 80 (2d Cir.2005).

**\*5** In evaluating the amount in controversy for jurisdiction purposes, a court, however, may consider events after the filing of the complaint when "post-filing events suggest the amount in controversy allegation in the complaint was made in bad faith." *Hall v. EarthLink Network, Inc.,* 396 F.3d 500, 507 (2d Cir.2005). "[T]he eventual discovery of a fact that establishes that the plaintiff could not meet the jurisdictional amount at the time of filing will defeat jurisdiction." *Bernshteyn v. Feldman,* 04 Civ. 1774(GEL), 2006 WL 2516514 at \*3 (S.D.N.Y. Aug. 29, 2006) (Lynch, then D.J., now Cir. J.), *citing Tongkook America, Inc. v. Shipton Sportswear Co., supra,* 14 F.3d at 785.

"[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied." *A.F.A. Tours, Inc. v. Whitchurch,* 937 F.2d 82, 87 (2d Cir.1991). Courts review claims for punitive damages with heightened scrutiny. *Nwanza v. Time, Inc.,* 125 F. App'x 346, 349 (2d Cir.2005), *citing Zahn v. Int'l Paper Co.,* 469 F.2d 1033, 1034 n. 1 (2d Cir.1972); *see also Career Initiatives Corp. v. Palmer,* 893 F.Supp. 295, 296 (S.D.N.Y.1995) (Batts, D.J.) (when a party relies on punitive damages to satisfy the amount in controversy requirement, such claims "trigger[ ] special judicial scrutiny."). "A trial court is not compelled to accept a claim for punitive damages made for the purposes of conferring jurisdiction." *Career Initiatives Corp. v.. Palmer, supra,* 893 F.Supp. at 296.

B. *Application*

1. *The Second Amended Complaint Is the Operative Pleading for Assessing Subject Matter Jurisdiction*
As a threshold issue, I conclude that the SAC, rather than the originally-filed complaint, should be considered in determining whether subject matter jurisdiction exists. Although Carling argues that subject matter jurisdiction should be assessed on the basis of his initial pleading and not the SAC (Docket No. 216 at 7), with certain exceptions discussed below, District Judges in this Circuit routinely consider amended pleadings in assessing subject matter jurisdiction. *See Acevado v. Citibank, N.A.,* 10 Civ. 8030(PGG), 2012 WL 996902 at \*3 (S.D.N.Y. Mar. 23, 2012) (Gardephe, D.J.) (court considered amended complaint in determining whether there was diversity jurisdiction); *Steinberg v. Zebrasky,* 10 Civ. 4372(RJS), 2011 WL 2565498 at \*2–\*3 (S.D.N.Y. June 14, 2011) (Sullivan, D.J.) (court considered only the claims in the amended complaint); *V.D.B. Pacific B.V. v. Chassman,* 753 F.Supp.2d 202, 205 (S.D.N.Y.2010) (Marrero, D.J.) (same). Courts are permitted to consider amended pleadings when the amendment is necessary to correct a defective allegation of subject matter jurisdiction. *See* 28 U.S.C. § 1653; *Schlesinger v. Councilman,* 420 U.S. 738, 744 n. 9 (1975).

Although a plaintiff's amendments to the complaint in a case that is properly removed to federal court will not defeat federal subject matter jurisdiction, *e.g., St. Paul Mercury Indem. Co. v. Red Cab Co., supra,* 303 U.S. at 293; *Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.,* 481 F. App'x 622, 625 (2d Cir.2012), the issue in those cases was whether a plaintiff could defeat a defendant's statutory right to removal by reducing the damages demanded to below the jurisdictional threshold or otherwise

tinkering with the allegations after the case had been removed to federal court. This action was commenced in this Court, and, thus, the concern that animated the decisions in the removal cases is not present here.

**\*6** Finally, I conclude that my reliance on the SAC does not run afoul of the rule that "events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his own volition, do not oust the district court's jurisdiction once it has attached," *St. Paul Mercury Indem. Co. v. Red Cab Co., supra,* 303 U.S. at 293. The analysis set forth herein does not rely on facts that occurred subsequent to the filing of the original complaint, but rather focuses on the claims asserted, the allegations of prelitigation facts in support of those claims and the potential damages those claims could sustain. Consideration of these factors is entirely proper in assessing subject matter jurisdiction. As the Supreme Court has also noted, a plaintiff's

> good faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit.

*St. Paul Mercury Indem. Co. v. Red Cab Co., supra,* 303 U.S. at 290; *see also Tongkook America Inc. v. Shipton Sportswear Co., supra,* 14 F.3d at 784–85 (affirming dismissal for lack of subject matter jurisdiction were discovery established that amount in controversy was, at the time of filing, less than the jurisdictional amount).

Accordingly, I shall assess the existence of subject matter jurisdiction in light of the allegations in the SAC.

### 2. *Law of the Case*

Carling first argues that Judge Marrero's denial of Peters' motion to dismiss the amended complaint for lack of subject matter jurisdiction is the law of the case and is, therefore, a binding ruling that subject matter jurisdiction exists. Peters responds that the law of the case doctrine is discretionary and, in any event, Judge Marrero's ruling cannot apply to the SAC because Carling has changed his theory of recovery.

" ' As most commonly defined, the doctrine of law of the case posits that when a court decides upon a rule of law, that decision should generally continue to govern the same issues in subsequent stages in the same case.' " *Rezzonico v. H & R Block, Inc.,* 182 F.3d 144, 148 (2d Cir.1999), *quoting Arizona v. California,* 460 U.S. 605, 618 (1983) (internal quotation marks and alterations omitted). It is a discretionary doctrine that "limits relitigation of an issue once it has been decided" in a case. *Rezzonico v. H & R Block, Inc., supra,* 182 F.3d at 148; *see also In re PCH Assocs.,* 949 F.2d 585, 592 (2d Cir.1991) ("This doctrine is a discretionary rule of practice and generally does not limit a court's power to reconsider an issue."). This doctrine, however, applies with less force to a court's determination of subject matter jurisdiction and questions of jurisdiction may be revisited notwithstanding a court's earlier finding. *Marcella v. Capital Dist. Physicians' Health Plan,* 293 F.3d 42, 47 (2d Cir.2002); *see also Rezzonico v. H & R Block, Inc., supra,* 182 F.3d at 149 ("Reexamination of a question regarding our jurisdiction is especially important whenever there is reason to believe that it may be lacking."); *DiLaura v. Power Auth. of State of N.Y.,* 982 F.2d 73, 77 (2d Cir.1992) (noting that "subject matter jurisdiction is particularly suited for reconsideration"); *Hamilton v. Dep't of Labor,* 04 Civ. 9605(PKC), 2006 WL 760276 at \*3 (S.D.N.Y. Mar. 22, 2006) (Castel, D.J.) ("[I]rrespective of any implicit findings of jurisdiction, even by controlling courts, subject matter jurisdiction may be reviewed at any time during an action.").

**\*7** I conclude that the law of the case doctrine does not prevent me from revisiting the issue of subject matter jurisdiction. First, Judge Marrero denied Peters' motion to dismiss for lack of subject matter jurisdiction in a summary ruling the basis of which is not disclosed in the record. Therefore, the law of the case doctrine is inapplicable because the nature of and basis for Judge Marrero's ruling are unknowable. *See DiLaura v. Power Auth. of State of N.Y ., supra,* 982 F.2d at 77 ("[T]he preliminary and summary nature of [the earlier] ruling counsels restraint in a strict application of law of the case.").

Second, a court's obligation to review subject matter jurisdiction generally exempts jurisdictional issues from law of the case principles. *See Walsh v. McGee,* 918 F.Supp. 107, 112 (E.D.N.Y.1996) ("[A] federal court cannot assert jurisdiction over a claim that is outside the scope of the court's jurisdiction merely by relying on the court's own prior decision that jurisdiction over such claim was proper.").

Thus, I conclude that the law of the case does not bar review of the court's subject matter jurisdiction.

### 3. *Carling's Claims*

Because this action is predicated on diversity jurisdiction, in assessing what damages are recoverable I must apply New York's choice-of-law rules to Carling's claims. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Rocchigiani v. World Boxing Council, Inc.,* 131 F.Supp.2d 527, 530 n. 5 (S.D.N.Y.2001) (Owen, D.J.), *citing Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). Both parties rely on New York law and do not claim that the law of any other jurisdiction applies; "such 'implied consent ... is sufficient to establish choice of law.' " *Motorola Credit Corp. v. Uzan,* 388 F.3d 39, 61 (2d Cir.2004), *quoting Krumme v. WestPoint Stevens, Inc.,* 238 F.3d 133, 138 (2d Cir.2000) (internal quotations omitted and alterations in original); *accord Teitelbaum v. Lay Siok Lin,* 423 F. App'x 106, 106 (2d Cir.2011). Accordingly, New York law applies to the claims in this matter.

Carling seeks $41,750 in compensatory damages for his fraud claim and $11,850 in compensatory damages for his breach of contract claim. The figure sought by Carling's fraud claim appears to include the $11,850 sought in his contract claim for the legal fees that he, rather than the Collazo Law Firm, billed to Peters in connection with matters other than the appeal from the sanctions order. Thus, Carling's total request for compensatory damages is approximately $42,000, and on the face of the SAC, Carling has not satisfied the $75,000 jurisdictional threshold. However, Carling claims he has satisfied the amount in controversy requirement because he has sought punitive damages in connection with both of these claims. Peters responds that punitive damages are not available for either of Carling's claims because there is no public harm and that, therefore, there is no diversity jurisdiction. [3]

**\*8**  For the reasons explained below, I conclude that punitive damages, to a legal certainty, are not available for either of Carling's claims and that the court lacks subject matter jurisdiction over Carling's claims.

#### a. *Fraud Claim*

In connection with his fraud claim, Carling alleges that Peters made various false statements and misrepresentations in order to induce him to represent her. Carling seeks $41,750 in compensatory damages comprised of (1) one-half of the $33,801 arbitral award in favor of the Collazo Law Firm or $16,900; (2) $11,850 in fees that Carling directly billed to Peters and (3) $13,000 for out-of-pocket expenses Carling incurred in connection with Peters' alleged fraud. In addition, he seeks an award of punitive damages in an unstated amount.

Assuming without deciding that Carling has stated a valid claim for fraud, he has not stated a claim for fraud that will support an award of punitive damages. In the ordinary fraud case, punitive damages are not recoverable. *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,* 837 F.Supp.2d 162, 198 (S.D.N.Y.2011) (Sullivan, D.J.); *Orlando v. Novurania of America, Inc.,* 162 F.Supp.2d 220, 226 (S.D.N.Y.2003) (McMahon, D.J.). Punitive damages for fraud are recoverable only "where the fraud, aimed at the public generally, is gross and involves high moral culpability." *Walker v. Sheldon,* 10 N.Y.2d 401, 405, 179 N.E.2d 497, 499, 223 N.Y.S.2d 488, 491 (1961); *accord Princes Point, LLC v. AKRF Engineering, P.C.,* 94 A.D.3d 588, 589, 944 N.Y.S.2d 493, 494 (1st Dep't 2012), *citing Ross v. Louise Wise Servs., Inc.,* 8 N.Y.3d 478, 489, 868 N.E.2d 189, 196, 836 N.Y.S.2d 509, 516 (2007) ( "[P]unitive damages are not warranted since plaintiff has not alleged wrongdoing evincing a high degree of moral turpitude that demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations."); *Hoeffner v. Orrick, Herrington & Sutcliffe LLP,* 85 A.D.3d 457, 458, 924 N.Y.S.2d 376, 377 (1st Dep't 2011) ("Mere commission of a tort, even an intentional tort, requiring proof of common law malice, is insufficient [to permit award of punitive damages];

there must be circumstances of aggravation or outrage, or a fraudulent or evil motive on the part of the defendant."). Where, as here, a fraud claim is related to a breach of contract claim, punitive damages are available only if: "(1) defendant's conduct is actionable as an independent tort; (2) the tortious conduct must be of the egregious nature set forth in [*Walker v. Sheldon, supra,* 10 N.Y.2d at 404–05, 179 N.E.2d at 499, 223 N.Y.S.2d at 491]; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 316, 662 N.E.2d 763, 767, 639 N.Y.S.2d 283, 287 (1995), *citing Rocanova v. Equitable Life Assurance Soc'y,* 83 N.Y.2d 603, 613, 634 N.E.2d 940, 944, 612 N.Y.S.2d 339, 343 (1994). Thus, for punitive damages to be available, the fraud must involve conduct that was aimed at the general public. *TVT Records v. Island Def Jam Music Grp.,* 412 F .3d 82, 94 (2d Cir.2005); *see also Carling Corp. v. Noonan,* 350 F .3d 6, 25 (2d Cir.2003) (New York courts typically apply the "public harm" standard "where the plaintiff claims that the defendant fraudulently misrepresented something about the contract between the two."); *Universe Antiques, Inc. v. Vareika,* 826 F.Supp.2d 595, 610 (S.D.N.Y.2011) (Marrero, D.J.), *aff'd,* ––– F. App'x ––––– (2d Cir. Feb. 4, 2013) ("[U]nder New York law, where a fraud claim arises out of a contract between the parties, punitive damages are available only where the fraud was 'aimed at the public generally' or rose to the level of 'evil.' " (internal citation omitted)). [4]

**\*9** I conclude that Carling cannot, to a legal certainty, recover punitive damages for his fraud claim. Peters' alleged conduct, while unprofessional at a minimum, does not rise to the high level of egregiousness necessary to justify punitive damages. Moreover, her conduct was aimed at Carling alone and not at the public in general. Indeed, many of Carling's allegations in support of his fraud claim address only the private interactions between himself and Peters, including the negotiations surrounding the legal services to be provided and billing arrangements. Carling argues that because Peters is a member of the bar and has allegedly made false statements before courts, her actions are directed at the public. These allegations, if true, are troubling, but they do not change the fact they have their genesis in a private fee dispute between an attorney and his former client.

For these reasons, I conclude that, to a legal certainty, Carling will be unable to recover punitive damages for his fraud claim.

### b. *Breach of Contract Claims*

Carling's second claim—"breach of contract and account stated"—is based on Peters' failure to pay the bills he submitted directly to her for the work he performed in connection with matters other than the sanctions appeal. It also appears that Carling is asserting a claim for a breach of the covenant of good faith and fair dealing (SAC ¶¶ 114–115).

As a general rule, under New York law, "punitive damages are unavailable in ordinary contract actions." *Carvel Corp. v. Noonan, supra,* 350 F.3d at 24. They are "recoverable in a contract action only 'if necessary to vindicate a public right.' " *TVT Records v. Island Def Jam Music Grp., supra,* 412 F.3d at 94. "To qualify, a breach must involve a 'particularly egregious fraud that was aimed at the public generally.' " [5] *MyPlayCity, Inc. v. Conduit Ltd.,* 10 Civ. 1615(CM), 2012 WL 1107648 at \*24 (S.D.N.Y. Mar. 30, 2012) (McMahon, D.J.), *citing TVT Records v. Island Def Jam Music Grp., supra, 4*12 F.3d at 95–96; *see Singer v. Xipto Inc.,* 852 F.Supp.2d 416, 427 (S.D.N . Y.2012) (Karas, D.J.) (dismissing claim for punitive damages where "Plaintiffs have made no allegation of conduct aimed at the general public" in breach of contract action where plaintiff alleged that it had invested in the defendant and monies had not been returned). New York law draws a distinction between " 'gross and wanton fraud upon the public' and 'an isolated transaction incident to an otherwise legitimate business.' " *TVT Records v. Island Def Jam Music Grp., supra,* 412 F.3d at 95, *quoting Walker v. Sheldon, supra,* 10 N.Y.2d at 406, 179 N.E.2d at 500, 223 N.Y.S.2d at 492. Only the former constitutes conduct aimed at the public generally. *TVT Records v. Island Def Jam Music Grp., supra,* 412 F.3d at 95.

As explained above with respect to the fraud claim, Carling has failed to show that Peters' conduct was gross and wanton, nor has he demonstrated that it was aimed at the public generally. Rather, this action boils down to a fee dispute between an attorney and a former client. There are no allegations in Carling's SAC that support the inference that Peters was directing her conduct at anyone but Carling himself. The fact that this private dispute has played out in a public forum by virtue of this instant action does not alter this conclusion.

### 4. *Peters' Counterclaims*

**\*10** Carling next argues that the jurisdictional amount has been satisfied because Peters has asserted counterclaims in excess of $75,000. Peters responds that she intends to withdraw any counterclaim exceeding $75,000 if her motion to dismiss for failure to state a claim were to be granted.

Neither the Supreme Court nor the Court of Appeals for the Second Circuit has ruled on whether a compulsory counterclaim brought of diversity jurisdiction case originally commenced in federal court should be considered in determining whether the amount of controversy has been satisfied. *See Kaplan v. Computer Sciences Corp.,* 148 F.Supp.2d 318, 319–20 (S.D.N.Y.2011) (Brieant, D.J.) ("[C]ourts are divided on the issue of whether a compulsory counterclaim may be considered in determining the amount of controversy for purposes of exercising diversity jurisdiction."); 14AA Charles A. Wright & Arthur R. Miller, *et al., Federal Practice & Procedure* § 3706 at 719–20 (4th Ed.2011) (*"Fed. Prac. & Proc."* ) (noting that this question does not arise often "because plaintiffs rarely attempt to enter a federal forum without claiming that the requisite jurisdictional amount is in controversy" and that the "cases that do exist reach divergent conclusions").

Carling argues that I should follow *Spectator Management Group v. Brown,* 131 F.3d 120 (3d Cir.1997). There, the Court of Appeals for the Third Circuit held that where "a defendant elects not to file a motion to dismiss for lack of jurisdiction, but answers a complaint by asserting a compulsory counterclaim, the amount of that counterclaim may be considered by the court in determining if the amount in controversy exceeds the statutory requirement for diversity jurisdiction." *Spectator Mgmt. Grp. v. Brown, supra,* 131 F.3d at 121. The Third Circuit reasoned that the complaint is "not the totality of the controversy" but rather "is merely the portion of the controversy for which plaintiff seeks relief." *Spectator Mgmt. Grp. v. Brown, supra,* 131 F.3d at 122. Thus "the substance of the controversy extends to any compulsory counterclaim brought under Rule 13(a)." *Spectator Mgmt. Grp. v. Brown, supra,* 131 F.3d at 122. Accordingly, the court found that the amount of a compulsory counterclaim can be considered in determining whether the amount in controversy has been satisfied. *Spectator Mgmt. Grp. v. Brown, supra,* 131 F.3d at 122.

I decline to follow the reasoning in *Spectator Management Group v. Brown.* In the context of removal cases, "the district courts in this Circuit that have considered this question have concluded that a counterclaim may not be used to satisfy the amount in controversy requirement for purposes of giving a federal court diversity jurisdiction." *Brown & Michaels PC v. Cardoso,* No. 05 Civ. 209(FJS)(GJD), 2005 WL 1528748 at \*2 (N.D.N.Y. June 27, 2005) (collecting cases). These conclusions are supported by the rule that, in general, the amount in controversy should be measured from a plaintiff's perspective. *See, e.g., Kheel v. Port of New York Auth.,* 457 F.2d 46, 49 (2d Cir.1972); *Bernard v. Gerber Food Products Co.,* 938 F.Supp. 218, 221 (S.D.N.Y.1996) (Baer, D.J.). Moreover, permitting aggregation of a plaintiff's claim with a defendant's compulsory counterclaim to satisfy the amount in controversy requirement "has a certain flavor of being inconsistent with the basic philosophy that the federal courts are courts of limited jurisdiction, a view designed to avoid incursions on the province of the state courts." [6] 14AA *Fed. Prac. & Proc., supra,* § 3706 at 724. Accordingly, I conclude that, in the absence of controlling authority, a defendant's compulsory counterclaim cannot be aggregated with a plaintiff's claim in order to satisfy the amount in controversy requirement of diversity jurisdiction.

**\*11** Here, Peters' counterclaims are compulsory because they all arise out of the attorney-client relationship between Carling and Peters that is the subject of Carling's claims. *See* Fed.R.Civ.P. 13(a) (1); *Jones v. Ford Motor Credit Co.,* 358 F.3d 205, 209 (2d Cir.2004) (under the Second Circuit's "logical relationship" test for compulsory counterclaims, an " 'absolute identity of factual backgrounds' " is not required, but " 'the essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit' " (internal citation omitted)). Thus, I conclude that the amounts Peters seeks in connection with her counterclaims cannot be considered in assessing whether the action satisfies the jurisdictional threshold.

### 5. *The Remaining Motions*

Because I have found that there is no subject matter jurisdiction over this action, I no longer have any authority to consider either Carling's motion for partial summary judgment or Peters's motion to dismiss the SAC. *Arrowsmith v. United Press Int'l, supra,* *320 F.2d at 221.* Accordingly, I express no opinion on the merits of these motions and recommend that they be denied as moot.

IV. *Conclusion*

For the foregoing reasons, I respectfully recommend that this action be dismissed for lack of subject matter jurisdiction and that Carling's motion for partial summary judgment (Docket No. 215) and Peters' motion to dismiss the SAC be denied as moot (Docket No. 225).

V. *Objections*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Paul A. Engelmayer, United States District Judge, 500 Pearl Street, Room 660/ New York, New York 10007 and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Engelmayer. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS ***WILL*** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* *474 U.S. 140, 155 (1985);* *United States v. Male Juvenile,* *121 F.3d 34, 38 (2d Cir.1997);* *IUE AFL–CIO Pension Fund v. Herrmann,* *9 F.3d 1049, 1054 (2d Cir.1993);* *Frank v. Johnson,* *968 F.2d 298, 300 (2d Cir.1992);* *Wesolek v. Canadair Ltd.,* *838 F.2d 55, 57–59 (2d Cir.1988);* *McCarthy v. Manson,* *714 F.2d 234, 237–238 (2d Cir.1983).*

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 865822

---

**Footnotes**

1    The Collazo Law Firm is now named Collazo Florentino & Keil LLP (SAC ¶ 13).

2    The objections of Carling and Peters to the March 30 Report and Recommendation are still pending (Docket Nos. 189, 191).

3    Peters makes a number of other arguments concerning the validity of Carling's claims, including: (1) his breach of contract claim is barred because the parties did not enter a retainer agreement and (2) preclusion principles, judicial estoppel and prudential standing bar him from seeking one-half of the arbitral award in this action. However, many of these arguments rely on facts outside the face of the SAC and therefore cannot be used to challenge the legal sufficiency of Carling's claims. Moreover, these arguments are immaterial to the central issue here—whether Carling is entitled to punitive damages on any of his claims. Finally, if the court lacks subject matter jurisdiction, any statement concerning the validity of Carling's claims would be *dicta. Arrowsmith v. United Press Int'l,* *320 F.2d 219, 221 (2d Cir.1963)* ("[A] court without ... jurisdiction lacks power to dismiss a complaint for failure to state a claim....") (Friendly, Cir. J.).

4    Carling's reliance on *Action S.A. v. Marc Rich & Co.,* *951 F .2d 504, 509 (2d Cir.1991)* for the proposition that punitive damages are available absent conduct aimed at the public is misplaced. Although the Court of Appeals for the Second Circuit held in that case that punitive damages did not require that the conduct be directed at the public generally, it was decided before the New York State Court of Appeals' decisions in *Rocanova v. Equitable Life Assurance Society, supra,* and *New York University v. Continental Insurance Co, supra.* It is, therefore, doubtful that *Action S.A* . continues

to be an accurate statement of New York law. *See Day Spring Enters., Inc. v. LMC Int'l, Inc.,* 98 Civ. 658, 2004 WL 2191568 at *32 (W.D.N.Y. Sept. 24, 2004); *In re West 56th St. Assocs.,* 181 B.R. 720, 726 (S.D.N.Y.1995) (Koeltl, D.J.). As explained in the text above, *Rocanova* and *New York University* both articulated a "public harm" requirement for punitive damages sought for a fraud claim arising out of a contractual relationship. Indeed, the Second Circuit has more recently held that "[t]his rule has not been changed by the Court of Appeals, and we have no reason to question its continued vitality ." *TVT Records v. Island Def Jam Music Grp., supra,* 412 F.3d at 94; *see also Mayline Enters., Inc. v. Milea Truck Sales Corp.,* 641 F.Supp.2d 304, 311 (S.D.N.Y.2009) (McMahon, D.J.) ("To the extent that some courts have found meeting the 'public harm' requirement unnecessary, the Second Circuit (whose rulings bind this court) has concluded that they are against the weight of authority on the issue.").

5    Carling cites several cases that suggest that punitive damages are available for a breach of contract on the basis of particularly egregious conduct alone. *See, e.g., Roy Export Co. Establishment of Vaduz, Liechtenstein v. CBS, Inc.,* 672 F.2d 1095 (2d Cir.1982); *Hudson Motors P'ship v. Crest Learning Enters., Inc.,* 845 F.Supp. 969 (E.D.N.Y.1994); *Borkowski v. Borkowski,* 39 N.Y.2d 982, 355 N.E.2d 287, 387 N.Y.S.2d 233 (1976); *Gordon v. Nationwide Mut. Ins. Co.,* 30 N.Y.2d 427, 285 N.E.2d 849, 334 N.Y.S.2d 601 (1972); *Walker v. Sheldon, supra,* 10 N.Y.2d 401, 179 N.E.2d 497, 223 N.Y.S.2d 488; *Aero Garage Corp. v. Hirschfeld,* 185 A.D.2d 775, 586 N.Y.S.2d 611 (1st Dep't 1992); *Williamson, Picket, Gross, Inc. v. Hirschfeld,* 92 A.D.2d 289, 460 N.Y.S.2d 36 (1st Dept' 1983); *Mulder v. Donaldson, Lufkin, & Jenrette,* 161 Misc.2d 698, 611 N.Y.S.2d 1019 (N.Y.Sup.Ct.1994).

These cases, however, were all decided prior to *Rocanova v. Equitable Life Assurance Society, supra, New York University v. Continental Insurance Co., supra,* and *TVT Records v. Island Def Jam Music Group, supra,* which, as explained in the text above, all found that punitive damages are only available upon a showing of public harm. Therefore, to the extent that the cases Carling cites hold that punitive damages do not require conduct aimed at the general public, they are no longer controlling.

6    The observation quoted in the text is particularly apt here because a state court proceeding has already been commenced to enforce the arbitral award in favor of the Collazo Law Firm arising of this same fee dispute.

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

629 Fed.Appx. 44

This case was not selected for publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

JETBLUE AIRWAYS CORPORATION, Plaintiff–Appellant,

v.

COPYTELE INC., John Roop, CTI Patent Acquisition Corporation, Loyalty Conversion Systems Corporation, Defendants–Appellees.

No. 15–86–cv

|

Oct. 21, 2015.

**Synopsis**

**Background:** Airline brought action against corporate defendants and one individual defendant. Defendants moved to dismiss for lack of subject matter jurisdiction and the United States District Court for the Southern District of New York, Daniels, J., dismissed all defendants with prejudice. Airline appealed.


**Holdings:** The Court of Appeals held that:

[1] district court lacked subject matter jurisdiction over amended complaint naming individual as sole defendant and therefore could not dismiss it with prejudice, and

[2] voluntary dismissal of corporate defendants could not be effectuated with prejudice.


Remanded with instructions.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.


West Headnotes (2)


[1] **Federal Courts** 🔑 Objections, Proceedings, and Determination

Where district court lacked subject matter jurisdiction over airline's amended complaint naming individual as sole defendant because amount in controversy did not exceed $75,000, it lacked power to dismiss the complaint with prejudice. 28 U.S.C.A. § 1332; Fed.Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

14 Cases that cite this headnote
More cases on this issue

**[2]    Federal Civil Procedure** 🔑 Grounds and objections

Airline's voluntary dismissal of corporate defendants in lawsuit could not be effectuated with prejudice. Fed.Rules Civ.Proc.Rule 41(a)(1), 28 U.S.C.A.

2 Cases that cite this headnote

More cases on this issue

**\*44** Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this case is **REMANDED** to the district court with instructions to effectuate the dismissal of all defendants without prejudice.

**Attorneys and Law Firms**

Casey L. Griffith, Griffith Bates Champion & Harper LLP, Dallas, TX, for Plaintiff–Appellant.

Gregory Koerner, Koerner & Associates, LLC, New York, NY, for Defendants–Appellees.

**\*45** Present: PETER W. HALL, DEBRA ANN LIVINGSTON, and RAYMOND J. LOHIER, JR., Circuit Judges.

## SUMMARY ORDER

Plaintiff–Appellant JetBlue Airways appeals from the United States District Court for the Southern District of New York's dismissal with prejudice of its claims against Defendants–Appellees CopyTele Inc., CTI Patent Acquisition Corporation, and Loyalty Conversion Systems Corporation ("the corporate defendants"), and against John Roop. The sole issue on appeal is whether the district court erred by dismissing this case with prejudice. We assume the parties' familiarity with the underlying facts and the procedural history of this case.

In its original complaint, JetBlue brought various claims against the corporate defendants and John Roop. JetBlue invoked 28 U.S.C. § 1338(a) [1] as the source for the district court's subject matter jurisdiction. Defendants did not file an answer, opting instead to file a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Two days after defendants filed their motion, JetBlue filed a first amended complaint pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. That first amended complaint named Roop as the sole defendant and invoked subject matter jurisdiction under 28 U.S.C. § 1332 based on the diversity of the remaining parties. Roop filed a motion to dismiss the first amended complaint for lack of subject matter jurisdiction on the basis that the amount in controversy did not exceed $75,000.

**[1]** The district court granted, with prejudice, Roop's motion to dismiss JetBlue's first amended complaint for lack of subject matter jurisdiction. This Court has previously held "that where a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice." *Hernandez v. Conriv Realty Assocs.,* 182 F.3d 121, 123 (2d Cir.1999). The district court's dismissal with prejudice was therefore improper because "Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist." *Id.* We must therefore remand to the district court with instructions to revise its order and dismiss the first amended complaint without prejudice.

**[2]** Our review of the record, including the transcript of the district court's status conference on December 9, 2014, convinces us that JetBlue's voluntary dismissal of the corporate defendants was tantamount to a voluntary dismissal under Rule 41(a)(1) of the Federal Rules of Civil Procedure, which may not be effectuated with prejudice unless such an intent has been demonstrated by the plaintiff. *See Youssef v. Tishman Constr. Corp.,* 744 F.3d 821, 823–24 (2d Cir.2014) ("It is undisputed that the plaintiff

Case 5:25-cv-01237-AMN-MJK    Document 8    Filed 10/16/25    Page 32 of 54

sought voluntary dismissal of the claim before any defendant filed an answer or motion for summary judgment. In such a case, the plain text of the rule provides that dismissal 'is without prejudice,' and affords no discretion in this respect to the district court." (footnote omitted)). Additionally, we construe the first amended complaint in the context of the procedural history as a tacit admission that the court did not have jurisdiction under 28 U.S.C. § 1338(a), and that inclusion of the corporate defendants would destroy the complete **46** diversity required by 28 U.S.C. § 1332. Here, again, where subject matter jurisdiction is lacking, a court may not dismiss a claim or party with prejudice. *See Hernandez,* 182 F.3d at 123. In sum, the district court dismissed the corporate defendants with prejudice in a situation where it lacked the authority to do so. We therefore remand with instructions to revise the order and effectuate the dismissal of the corporate defendants without prejudice.

Defendants implore us to affirm the dismissals with prejudice so as to prevent JetBlue from refiling what they—and several courts—have deemed a meritless and frivolous suit. This would require us to turn a blind eye to our holding in *Hernandez,* which of course we cannot do. Our decision does not, however, leave defendants without recourse in the event that JetBlue repeatedly pursues claims that are frivolous or retaliatory. They may, for example, press for Rule 11 sanctions—an avenue that the district court expressly left open. J.A. 250 (denying defendants' request for sanctions "without prejudice to renew if there is further litigation or further costs that are incurred in pursuing what, in essence, I have determined to be meritless claims").

Finally, we find defendants' attempt to paint the dismissal with prejudice as a Rule 11 sanction unconvincing, particularly in light of the district court's repeated assertions that it was denying such sanctions.

We have considered the appellants' remaining arguments and determine that they are without merit. For the foregoing reasons this case is REMANDED to the district court with instructions to effectuate the dismissal of all defendants without prejudice.

**All Citations**

629 Fed.Appx. 44

---

## Footnotes

1    28 U.S.C. § 1338(a) grants United States district courts original jurisdiction of civil actions "arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."

---

**End of Document**                                             © 2025 Thomson Reuters. No claim to original U.S. Government Works.

125 Fed.Appx. 346

This case was not selected for publication in the Federal Reporter.

United States Court of Appeals,

Second Circuit.

Austen NWANZE, Plaintiff–Appellant,

v.

TIME, INC., Defendant–Appellee.

No. 03–7135.

|

March 9, 2005.

**Synopsis**

**Background:** Magazine subscriber, who was a prisoner proceeding in forma pauperis, brought pro se action against magazine for having allegedly fraudulently induced him to subscribe to magazines with promises of multi-million dollar prizes that he never received. The United States District Court for the Western District of New York, Charles J. Siragusa, J., dismissed complaint, and denied subscriber's motion to amend or alter the judgment. Subscriber appealed.

**Holdings:** The Court of Appeals held that:

[1] subscriber's claim for actual damages did not meet $75,000 amount-in-controversy threshold requirement for diversity jurisdiction, and

[2] subscriber's claim for punitive damages did not meet amount-in-controversy threshold.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (2)

**[1]**    **Federal Courts**  👈  Contract and tort claims

Under New York law, magazine subscriber could not recover actual damages for loss of speculative, expected proceeds, and, thus, his claim for actual damages in amount of $2,550,112, arising when magazine allegedly fraudulently induced him to subscribe to magazines with promises of multi-million dollar prizes that he never received, did not meet $75,000 amount-in-controversy threshold requirement for diversity jurisdiction. 28 U.S.C.A. § 1332(a)(1).

28 Cases that cite this headnote

**[2]**    **Federal Courts**  👈  Punitive damages

Magazine subscriber's claim for punitive damages in amount of $5,000,000, arising when magazine allegedly fraudulently induced him to subscribe to magazines with promises of multi-million dollar prizes that he never received,

did not satisfy $75,000 amount-in-controversy threshold requirement for diversity jurisdiction, in light of unspecified or no actual damages. 28 U.S.C.A. § 1332(a)(1).

45 Cases that cite this headnote

**\*346**  Appeal from a judgment of the United States District Court for the Western District of New York (Charles J. Siragusa, Judge).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the **\*347** District Court be and hereby is AFFIRMED.

## Attorneys and Law Firms

Austen Nwanze, Bradford, PA, for Appellant, pro se.

Douglass B. Maynard (Michael D. Lockard), Akin Gump Strauss Hauer & Feld LLP, New York, NY, for Appellees, of counsel.

PRESENT: NEWMAN, LEVAL and CABRANES, Circuit Judges.

SUMMARY ORDER

**\*\*1**  Plaintiff-appellant Austen Nwanze appeals the judgment of the District Court, entered December 24, 2002, dismissing without prejudice his claims against defendant-appellee Time, Inc. ("Time"), and an order of the District Court, entered January 16, 2003, denying his motion to amend or alter the Court's judgment, pursuant to Fed.R.Civ.P. 59(e). Nwanze, currently incarcerated in western Pennsylvania, brought this action *pro se* against Time for having allegedly fraudulently induced him to subscribe to magazines with promises of multi-million dollar prizes that he never received.

The District Court *sua sponte* dismissed Nwanze's action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss the case [brought by an *in forma pauperis* litigant] at any time if the court determines that ... the action ... fails to state a claim on which relief may be granted...." The District Court based its determination that Nwanze's action did not state a claim on which relief may be granted on its holding that it lacked venue over the action pursuant to 28 U.S.C. § 1406(a). The Court explained its lack of venue:

> [Nwanze] is incarcerated in ... the Western District of Pennsylvania. He states that [Time] is a corporation headquartered in ... the Southern District of New York. [He] has not alleged that any portion of the events giving rise to this claim took place in the Western District of New York.

On appeal, Nwanze argues that the District Court erred by dismissing his complaint—although his scant two-page memorandum offers little explanation of how this Court might arrive at that conclusion. He seeks a remand to the District Court, with instructions either (1) to allow him to amend his complaint to cure "venue deficiency," or (2) to transfer his action to the proper venue.

We need not be detained with the questions whether the District Court abused its discretion in dismissing Nwanze's claims on venue grounds or in declining to transfer the action to another district, because this action should be dismissed on alternate grounds—namely, there is no subject matter jurisdiction because it is a legal certainty that Nwanze cannot satisfy the amount-in-controversy requirement of diversity-of-citizenship subject matter jurisdiction. *See Cap Gemini Ernst & Young, U.S., L.L.C.*

*v. Nackel,* 346 F.3d 360, 362 (2d Cir.2003) ("[T]he court may examine subject matter jurisdiction, *sua sponte,* at any stage of the proceeding.") (quotation marks omitted); *ACEquip Ltd. v. Am. Eng'g Corp.,* 315 F.3d 151, 155 (2d Cir.2003) ("Our court may ... affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court.").

 **\*\*2** In his complaint, Nwanze seeks actual damages of $2,550,112 and punitive damages of $5,000,000. On its face, this would appear to satisfy the requirements of federal subject matter jurisdiction based on diversity of citizenship. *Compare* Nwanze Compl. at ¶¶ 3, 4, 20, 21 (alleging over seven million dollars' damages owed by a **\*348** New York defendant to a Pennsylvania plaintiff), *with* 28 U.S.C. § 1332(a), (a)(1) (providing federal subject matter jurisdiction when the parties are citizens of different states and the amount in controversy exceeds $75,000).

While we customarily interpret a plaintiff's allegations of damages as sufficient to satisfy the amount-in-controversy requirement, we do not do so when it is a "legal certainty" that the plaintiff cannot recover the damages he seeks. *See Hall v. EarthLink Network, Inc.,* No. 04–0384–CV, 2005 WL 147139, at n. 5 (2d Cir. Jan.25, 2005) ("In a diversity case, if a court makes a face-of-the-complaint determination that the $75,000 amount in controversy cannot be recovered 'to a legal certainty,' the case is dismissed for lack of subject matter jurisdiction."); *see also St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify a dismissal.").

 **[1]**  Under New York law, [1] it is a legal certainty that Nwanze cannot recover the actual damages of $2,550,112 that he seeks. He seemingly bases this figure principally on what he interprets to have been representations from Time that, if he subscribed to their magazines, he would win two prizes—one for $1,666,775 in February 1999, and the other for $833,337 in April 2001. New York does not permit Nwanze to claim actual damages for the loss of speculative, expected proceeds. Rather, he may claim actual damages only for his "out-of-pocket" expenses. *See Kaddo v. King Serv., Inc.,* 250 A.D.2d 948, 949, 673 N.Y.S.2d 235 (3d Dep't 1998) ("[T]he proper measure of damages is plaintiff's actual pecuniary loss as a result of the fraud, or what is known as the out-of-pocket rule. Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained.") (internal citations and quotation marks omitted). Nowhere does Nwanze allege out-of-pocket expenses anywhere near the $75,000 amount-in-controversy threshold requirement. [2]

Nwanze's claim for $5,000,000 in punitive damages does not remedy the insufficiency of amount-in-controversy in this case. When available, we will consider punitive damages for these purposes, *see* **\*349** *A.F.A. Tours, Inc. v. Whitchurch,* 937 F.2d 82, 87 (2d Cir.1991) ("[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied."), but we will consider those punitive damages with heightened scrutiny, *see Zahn v. Int'l Paper Co.,* 469 F.2d 1033, 1034 n. 1 (2d Cir.1972) ("[I]n computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny ... than a claim for actual damages.").

 **\*\*3 [2]**  To put it mildly, Nwanze's demand for five million dollars' punitive damages based on his claims that Time fraudulently induced him into subscribing to magazines with promises of multi-million dollar prizes—with unspecified or no actual damages—"raise[s] a suspicious judicial eyebrow." *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 583, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *see also Gilman v. BHC Sec.,* 104 F.3d 1418, 1431 n. 13 (2d Cir.1997). We will not allow a plaintiff to meet the amount-in-controversy requirement by demanding $5,000,000 in punitive damages, when the only actual damages that he claims are unavailable as a matter of law.

Lastly, we note that Nwanze has compiled what appears to be a substantial history of unsuccessful litigation in the federal courts. [3] We do not scold Nwanze for availing himself of the United States's judicial fora, nor do we comment on whether any past actions he has brought as a *pro se* litigant appear to have been frivolous. But we do note that the District Court, in dismissing Nwanze's claim, provided that "any appeal from this Order would not be taken in good faith." We remind Nwanze that frivolous appeals may be met with leave-to-file sanctions. *See, e.g., In re Martin–Trigona,* 9 F.3d 226 (2d Cir.1993) (discussing leave-to-file sanctions available to this Court); *In re Drexel Burnham Lambert Group,* 995 F.2d 1138, 1147 (2d Cir.1993) (noting that

sanctions for a frivolous appeal may be imposed even if the appeal was brought in good faith, so long as the "appeal taken is found to be groundless, without foundation, and without merit").

For the reasons stated above, the judgment of the District Court is hereby AFFIRMED.

Judge Leval concurs on the ground that the District Court acted within its discretion  **\*350**  in deciding to dismiss the action, rather than transfer venue.

**All Citations**

125 Fed.Appx. 346, 2005 WL 551207

---

### Footnotes

1    As a federal court adjudicating claims brought pursuant to diversity-of-citizenship jurisdiction, we apply the law of the forum state. *See, e.g., Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co.,* 375 F.3d 168, 178 n. 23 (2d Cir.2004). Accordingly, we apply New York's choice-of-law jurisprudence to determine whether New York or Pennsylvania law should be applied to Nwanze's claims. With respect to the relevant issue here—whether Nwanze may claim actual damages for not having received money prizes in exchange for subscribing to magazines, "benefit of the bargain" damages—there is no substantive difference between New York and Pennsylvania law. *See Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996) ("Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."); *Neuman v. Corn Exchange Nat'l Bank & Trust Co.,* 356 Pa. 442, 455, 51 A.2d 759 (1947) ("In an action for deceit or fraud in Pennsylvania, the plaintiff can recover only 'his actual loss' and not 'the value of his bargain'."). Accordingly, we apply New York law.

2    Subtracting the two prize amounts ($1,666,775 and $833,337) from Nwanze's claim of actual damages ($2,550,112) leaves $50,000. We note both that this figure is shy of the $75,000 amount-in-controversy requirement, and that, in any event, Nwanze provides no explanation for the amount. None is apparent from reading Nwanze's complaint.

3    We have not compiled an exhaustive list of matters that Nwanze has initiated, but we note that our search of relevant databases reveals a number of actions—in none of which Nwanze has prevailed.

By our count, Nwanze has unsuccessfully petitioned for a writ of certiorari from the United States Supreme Court at least seven times. *See Nwanze v. Philip Morris, Inc.,* 535 U.S. 1074, 122 S.Ct. 1955, 152 L.Ed.2d 857 (2002); *Nwanze v. Philip Morris, Inc.,* 534 U.S. 962, 122 S.Ct. 369, 151 L.Ed.2d 280 (2001); *Nwanze v. United States,* 516 U.S. 1064, 116 S.Ct. 747, 133 L.Ed.2d 695 (1996); *Nwanze v. Jones,* 516 U.S. 835, 116 S.Ct. 112, 133 L.Ed.2d 64 (1995); *Nwanze v. Morchower, Luxton & Whaley,* 516 U.S. 852, 116 S.Ct. 150, 133 L.Ed.2d 95 (1995); *Nwanze v. Woody,* 515 U.S. 1135, 115 S.Ct. 2565, 132 L.Ed.2d 817 (1995); *Nwanze v. United States,* 510 U.S. 926, 114 S.Ct. 332, 126 L.Ed.2d 277 (1993).

This Court, too, has dealt with Nwanze's appeals. *See, e.g., Nwanze v. Philip Morris, Inc.,* 6 Fed.Appx. 98, 100 (2d Cir.2001) (affirming the district court's dismissal of Nwanze's claim against a tobacco manufacturer and others for exposure to second-hand smoke, and noting that "[t]he bulk of Nwanze's contentions on appeal are meritless and repeat arguments properly rejected below").

Other courts of appeals have dealt with Nwanze repeatedly. *See, e.g., Nwanze v. Tepper Brothers,* 67 F.3d 296 (4th Cir.1995) (affirming dismissal of his *pro se* breach of contract claim); *Nwanze v. Woody,* 43 F.3d 1467 (4th Cir.1994) (affirming dismissal of his *pro se* 42 U.S.C. § 1983 claim).

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4052261

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Tonya POWELL, Plaintiff,

v.

Arthur R. JOHNSON, Commissioner of Department of Social Services, in his official

capacity, and Donna Murco, in her official and individual capacity, Defendants.

Tonya Powell, Plaintiff,

v.

Tony Nicely, Geico Insurance in its official capacity, Geoffrey Mills, in his official and individual

capacity, Bruce Jaquay, in his official and individual capacity, Elwin Hoyt, Sr., in his official and

individual capacity, Githesh Ramamurthy, CCC Information Services, in its official capacity, Defendants.

Civil Action Nos. 3:11–CV–1432 (GTS/DEP), 3:11–CV–1471 (GTS/DEP).

|

Jan. 9, 2012.

## Attorneys and Law Firms

Tonya Powell, Binghamton, NY, pro se.

## REPORT AND RECOMMENDATION

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** In this first of these two actions, *pro se* plaintiff, Tonya Powell, has filed a civil rights complaint alleging that her civil rights were violated, apparently in association with an investigation conducted by the Broome County Department of Social Services. Accompanying her complaint is an application to proceed *in forma pauperis* ("IFP").

Plaintiff is a familiar litigant to this court. Over the past eighteen years, she has filed sixteen lawsuits in this district,[1] including the lead action as well the member case, filed eight days later.[2] In all of these lawsuits she has sought permission to proceed IFP, without the requirement of paying the initial $350 filing fee for commencing an action. Almost all of the these actions brought by plaintiff have been dismissed, the majority *sua sponte* by the court for failure to state a cause of action and/or as frivolous, and the remainder on motions made by the defendants.[3]

For the reasons set forth below, I recommend that plaintiff's complaints in both actions be *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(b) for failure to state a cause of action and as frivolous, and that plaintiff be directed to show cause to this court why she should not be barred from filing any future *pro se* actions in this court without first obtaining leave of the court.

I. *PROCEDURAL HISTORY*

Plaintiff filed her complaint in the lead action on December 8, 2011 under the authority of 42 U.S.C. § 1983, alleging violations of her Fourth, Fifth, Ninth, and Fourteenth amendment rights. On December 16, 2011, plaintiff filed a second, unrelated action. In that action plaintiff names five individual defendants and two corporations, alleging a claim for breach of the implied covenant

of good faith and fair dealing apparently arising out of an automobile insurance claim. *Powell v. Johnson, et al.,* No. 3:11–CV1432. With both complaints she filed applications to proceed IFP,[4] which, if granted, would allow plaintiff to proceed without paying the $350 filing fee for commencement of an action. Those IFP applications, filed pursuant to 28 U.S.C. § 1915, require the court to engage in a *sua sponte* review of the complaints to determine their facial sufficiency.

## II. *GENERAL PRINCIPLES GOVERNING THE COURT'S REVIEW*

A. *Section 1915 Standard of Review*

Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis,*

> (2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B). Thus, the court has a gatekeeping responsibility to determine that a complaint may be properly maintained in this district before it may permit a plaintiff to proceed with an action *in forma pauperis. See id.*

**\*2**  In deciding whether a complaint states a colorable claim a court must extend a certain measure of deference towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983). There is, nonetheless, an obligation on the part of the court to determine that a claim is not frivolous before permitting a plaintiff to proceed.[5] *See Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (District Court may dismiss frivolous complaint *sua sponte* notwithstanding fact the plaintiff has paid statutory filing fee); *Wachtler v. County of Herkimer,* 35 F.3d 77, 82 (2d Cir.1994) (District Court has power to dismiss case *sua sponte* for failure to state a claim).

When reviewing a complaint under section 1915(e), the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief [.]" Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 " 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.' " *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, \*1 (S.D.N.Y. Nov.30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977)))  (other citation omitted).[6]

When evaluating the facial sufficiency of a pleading, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.,* 129 S.Ct. at 1949 "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

III. *ANALYSIS OF PLAINTIFF'S CLAIMS IN POWELL v. JOHNSON, ET AL.*

A. *Background* [7]

**\*3** In her complaint, [8] plaintiff alleges that her civil rights were violated when an investigation of a false claim of child abuse was conducted and her name was reported to New York State's central register of suspected child abusers. It appears from plaintiff's complaint that in or about 2009 she was arrested, held in jail, and criminally accused in connection with the alleged abuse of a child, a charge which she claims was made upon the false accusation of the child's mother. [9] Thereafter, plaintiff was "notified by the Department of Social Services", although plaintiff's complaint does not provide any detail regarding the notification, and was visited at her home by defendant Murko, an employee of the Broome County Department of Social Services, who advised that she was there to investigate a complaint of endangerment of the welfare of a child. According to plaintiff, on Murko's arrival, Powell maintained that she was innocent of any such conduct, and advised Murko that the child was fine and that there was no need for an investigation. Murko "stressed" that she "must" see the child and make a report, and plaintiff apparently permitted her to do so.

Plaintiff claims that she was ultimately cleared of any criminal wrongdoing and attaches to her complaint a letter dated May 7, 2010 from the New York State Office of Children and Family Services, advising that the report of suspected child abuse or maltreatment was determined to be "unfounded", and that in accordance with New York Social Services Law, all identifying information in the report has been legally sealed from the New York State Child Abuse and Maltreatment Register ("State Central Register"). Plaintiff generally alleges that she has lost income due to the "false charge" because she could not supplement her income by receiving children for daycare. As relief, plaintiff seeks an award of $150,000 "or more" in compensatory damages.

B. *Section 1983*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 2516, 110 L.Ed.2d 455 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 95–CV–0272, 1995 WL 236245, *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, J.) (" § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). In order to state a claim under section 1983, a plaintiff must allege that (1) the challenged conduct was attributable, at least in part, to a person or entity acting under color of state law, and (2) such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993); *see also Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) (quoting *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). For the reasons set forth below, I recommend a finding that plaintiff has failed to state a cause of action under section 1983.

1. *Procedural Due Process*

**\*4** The essence of plaintiff's complaint appears to be that she was deprived of her Fourteenth Amendment right to due process when her name was placed on the State Central Register without notice and an opportunity to be hear and as a result deprived of supplemental income from her daycare business. To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process, a plaintiff must show that he or she 1) possessed an actual liberty interest and 2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246, 142 L.Ed.2d 202 (1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996).

Plaintiff's claims arise out of an investigation conducted pursuant to Article 6 of New York Social Services Law ("Social Services Law"), which governs the recording and investigation of reports of suspected maltreatment of children and the administrative process by which substantiated reports may be reviewed. *See generally* N.Y. Soc. Serv. Law § 411–428; *see also Valmonte v. Bane,* 18 F.3d 992, 995 (2d Cir.1994). Section 422 of the Social Services Law establishes the State Central Register, which is

a database of reports of child abuse maintained by both the state and various county departments of social services. N.Y. Soc. Serv. Law §§ 422(1); *see also id.* at §§ 423(1), 424(2); *Valmonte,* 18 F.3d at 995. Under that section, when an allegation of child abuse or maltreatment is received through use of the telephone hotline and "could reasonably constitute a report of child abuse or maltreatment", [10] such allegation must immediately be transmitted from the office of children and family services to the appropriate local child protective service for investigation. *Id.* at § 422(2). The local child protective service is required to initiate an investigation within twenty-four hours of receiving a report of abuse or maltreatment and to determine within sixty days whether the report is "indicated" or "unfounded". *Id.* at § 424(6) and (7). The State Central Register includes all information in the written report, including the final disposition. *Id.* at § 422(5).

Separate and apart from reports transmitted by the State Central Register, each local child protective service is required to be available to receive reports of suspected child abuse or maltreatment twenty-four hours a day, seven days a week. *See* N.Y. Soc. Serv. Law § 424(1) and(3); *see also* 18 N.Y.C.R.R. § 423.3. Upon receipt of such a report, the local department of social services is required to report the fact of its receipt to the State Central Register and to conduct an investigation, including "an evaluation of the environment of the child named in the report and any other children in the same home ...."[11] N.Y. Soc. Serv. Law § 424(3) and (6). In this case, it appears from plaintiff's submissions that a report implicating plaintiff as an abuser was made, the State Central Register was notified of its receipt, and, in compliance with the above referenced provisions, an investigation was conducted. [12]

**\*5** In *Valmonte,* the Second Circuit was presented with the issue of whether New York's maintenance of its State Central Register, which identifies individuals accused of child abuse or neglect, and its communication of those on this list to potential employers in the childcare field implicated a protectible liberty interest. *Valmonte,* 18 F.3d at 994. In that case, upon receipt of a complaint to the child abuse hotline and after a resulting child abuse investigation, the county department of social services had determined that the complaint against the plaintiff was "indicated". *Valmonte,* 18 F.3d at 996. Following resolution of such charges in a family court proceeding in her favor, the plaintiff requested expungement of the indicated report from the State Central Register; her request was denied both initially and on her administrative appeal on the grounds that the state found "some credible evidence" to support the allegations against her. *Id.* at 997. The plaintiff then brought an action in district court challenging the constitutionality of the statutory scheme under section 1983. *Id.* at 997–98. On motion of the defendants, the district court dismissed her claims.

On her appeal to the Second Circuit, the court initially found that the plaintiff had established a liberty interest of constitutional proportions, holding that the dissemination of information from the State's Central Register to potential employers, coupled with the defamatory nature of inclusion on the list, was sufficient to implicate a liberty interest. *Id.* at 995; *see also Finch v. New York State Office of Children and Family Servs., et al.,* No. 04 Civ. 1668, 2008 WL 5330616, at \*2 (S .D.N.Y. Dec. 18, 2008). Proceeding to consider whether the statutory scheme provided constitutionally adequate procedural safeguards of that interest, the *Valmonte* court found that it did not; the statute required only "some credible evidence" to initially include a subject on the list, and it was not until later, at a post-deprivation hearing, after the subject had already likely been denied employment due to his or her inclusion on the State Central Register, that the local department of social services was required to prove the allegations of abuse against the subject by a fair preponderance of the evidence. *Valmonte,* 13 F.3d at 1003. Holding that "the high risk of error produced by the procedural protections established by New York [was] unacceptable," the court reversed the district court and remanded the matter for further proceedings. [13] *Id.* at 1004–1005.

The facts alleged by the plaintiff in this case are vastly different from those upon which the Second Circuit's *Valmonte* decision was predicated. In her complaint, plaintiff alleges that her name was placed upon the State Central Register based upon false information, and she claims further that in consequence she lost supplemental income because she could not receive children for her daycare. In general, "[t]he names of individuals on the Central Register are not publicly available...." *Valmonte,* 18 F.3d at 995. Crucial to the *Valmonte* court's finding that the plaintiff in that case had sufficiently stated a protectible liberty interest was the fact that the she had "allege[d] much more than a loss of employment flowing from the effects of simple defamation", or the appearance of her name on the child abuse registry; the court found that her listing on the State Central Register had

placed a tangible burden on her employment prospects because plaintiff alleged that she would look for a job in the childcare field, and the statute required childcare providers to consult the State Central Register. *Valmonte,* 18 F.3d at 1001. In other words, the court found that plaintiff had alleged that as a result of her inclusion on the list she would be unable to find a job in her chosen field. *See id.*

 **\*6** Here, according to her own allegations, plaintiff is self-employed as a home child daycare provider. [14] Under New York regulations, an operator of a home child care must obtain both a license and registration to operate such a service, which requires the operator to provide statewide clearance forms necessary to complete required screening by the State Central Register to determine if he or she has been the subject of an "indicated" report of child abuse or maltreatment. *See* 18 N.Y.C.R.R. § 413.2(l) and (m), 416.2(a)(8), and 417.2(a)(8). There are no allegations in plaintiff's complaint that her child daycare license or registration, if any, was affected by the investigation at issue. While plaintiff here alleges a loss of income, she does not claim she was deprived of any employment due to the inclusion of her name on the list, and even more, the attachment to her complaint shows that within seven months of the initiation of the local child abuse investigation she was notified by the state that the complaint had been determined "unfounded" and that the agency's records were sealed. As a result, any burden on her employment prospects that may have existed was eliminated. Moreover, there are no allegations that the fact that her name was entered into the State Central Register was in any way disclosed or disseminated by the defendants, thereby subjecting the plaintiff to the stigmatization that was of concern to the *Valmonte* court. Considering that the information in the State Central Register is maintained confidential, except in limited circumstances not applicable here, [15] it seems unlikely that the mere entry of plaintiff's name into the State Central Register without any disclosure of that fact and with no resulting loss of or burden upon her employment, or other right, gives rise to a protectible liberty interest.

Nonetheless, broadly construing plaintiff's complaint, without making any determination as to the merits of plaintiff's claims, I have assumed solely for the purposes of my section 1915 review that plaintiff has sufficiently alleged a plausible claim for violation of her right to procedural due process. Even if plaintiff has done so, however, she ultimately fails to state a cause of action because she has not alleged sufficient facts to support such a claim against either of the named defendants

 2. *Immunity*

 a. *Social Services Law Section 419*
Addressing first plaintiff's claims against defendant Murko, who is apparently a caseworker employed by the Broome County Department of Social Services, the complaint alleges that she conducted the investigation regarding the charge of abuse. Section 419 of the Social Services Law provides:

> Any person, official, or institution participating in good faith in the providing of a service pursuant to section four hundred twenty-four of this title, the making of a report, the taking of photographs, the removal or keeping of a child pursuant to this title, or the disclosure of child protective services information in compliance with sections twenty, four hundred twenty-two and four hundred twenty-two-a of this chapter shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions. For the purpose of any proceeding, civil or criminal, the good faith of any such person, official, or institution required to report cases of child abuse or maltreatment or providing a service pursuant to section four hundred twenty-four or the disclosure of child protective services information in compliance with sections twenty, four hundred twenty-two and four hundred twenty-two-a of this chapter shall be presumed, provided such person, official or institution was acting in discharge of their duties and within the scope of their employment, and that such liability did not result from the willful misconduct or gross negligence of such person, official or institution.

**\*7** N.Y. Soc. Serv. Law § 419. This provision creates qualified immunity from civil and criminal liability resulting from an investigation conducted under Social Services Law Article 6 as long as the individual conducting that investigation was acting within the scope of his or her employment and did not engage in willful misconduct or gross negligence. *Preston v. New York,* 223 F.Supp.2d 452 (S.D.N.Y. Jun.27, 2002) (citation omitted), *aff'd,* 87 Fed. App'x 221 (2d Cir.2004) (affirming for substantially the same reasons stated by the district court and noting also that defendants possessed qualified immunity under federal law) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Powell v. Johnson, et al.,* No. 3:11–CV–1304, slip op. (N.D.N.Y. Dec. 6, 2011) (D'Agostino, J.); *Rine v. Chase,* 2309 A.D.2d 796, 765 N.Y.S.2d 648 (2d Dep't 2003). "Under the [Social Services Law], conclusive proof of child abuse is not a requisite threshold to trigger reporting under § 424." *Preston,* 223 F.Supp.2d at 471. "Morever, [the Social Services Law] creates a statutory presumption that actions taken to protect a child are made in good faith[,]" and only a persuasive showing bad faith can over come that presumption, even on a section 1915(e) review. *Preston,* 223 F.Supp.2d at 471–72. (citation omitted).

Even when broadly construing plaintiff's complaint to raise the strongest possible arguments, defendant Murko's conduct was entirely consistent with the requirements of the governing statute. By plaintiff's own admission, the mother of the child who was the subject of the alleged abuse made a complaint. Evidently, as a result, in accordance with the Social Services Law, a determination was made that the allegations, if true, would be legally sufficient to constitute abuse or neglect. *See* N.Y. Soc. Serv. Law § 422(a). Upon that determination, the local department of social services was obligated to initiate an investigation, which was apparently assigned to defendant Murko, including an evaluation of the child's environment. *See id.* at § 424(3) and(6). It seems clear that the complaint of the child's mother and/or the criminal charges against plaintiff provided defendant Murko a good faith basis for her investigation. [16] *See Preston,* 223 F.Supp.2d at 472 (noting that the facts demonstrated a "substantial basis" for defendants' report "because the mother of the Minor and the Minor herself came forward to report the incident.") (citing *Kubik v. New York State Dep't of Soc. Serv.,* 244 A.D.2d 606, 664 N.Y.S.2d 365, 368 (3d Dep't 1997); *Isabelle V. v. City of New York,* 150 A.D.2d 312, 541 N.Y.S.2d 809, 809 (1st Dep't 1989)). The complaint is devoid of any allegations that defendant Murko took any action that was not either authorized or required by the Social Services Law. Indeed, even the most generous reading of plaintiff's complaint does not even remotely suggest that Murko acted with bad faith. As a result, plaintiff's claims against Murko in her official capacity must be dismissed. *See Preston,* 223 F.Supp.2d at 472.

**\*8** Plaintiff's claims against this defendant is her individual capacity are likewise subject to dismissal because she has nowhere alleged facts showing that Murko acted outside the scope of her employment; rather, her claims are clearly focused on Murko's actions as a caseworker for the Broome County Department of Social Services. *See Preston,* 223 F.Supp.2d at 472. Accordingly, plaintiff's claims against Murko are subject to dismissal for failure to state a cause of action and as frivolous based upon the immunity she is afforded by Social Services Law § 419 and the lack of any allegations to impose personal liability upon her. *See id.*

   b. *The Doctrine of Qualified Immunity*

While the district court's decision in *Preston* suggests that Social Services Law § 419 protects local child protective workers even from federal law violations, *see id.* at 470–72, even if that were not the case, plaintiff's claims against Murko would be precluded under the federal doctrine of qualified immunity. As developed in federal common law, qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738 (citations omitted). "In assessing an [official's] eligibility for the shield, 'the appropriate question is the objective inquiry whether a reasonable [official] could have believed that [his or her actions were] lawful, in light of clearly established law and the information the [official] possessed." *Kelsey v. County of Schoharie,* 567 F.3d 54, 61 (2d Cir.2009) (quoting *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). The law of qualified immunity seeks to strike a balance between the need to hold government officials accountable for irresponsible conduct and the need to protect them from "harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009); *see also Nagle v. Marron,* 663 F.3d 100, 2011 WL 6142196, at \*11 (2d Cir. Dec.12, 2011).

In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court "mandated a two-step sequence for resolving government official's qualified immunity claims." *Pearson,* 555 U.S. at 232, 129 S.Ct. at 815–16. The first step requires the court to consider whether, taken in the light most favorable to the party asserting immunity, the facts alleged show that the conduct at issue violated a constitutional right, [17] *Kelsey,* 567 F.3d at 61, with "the second step being whether the right is clearly established", *Okin v. Village of Cornwall–On–Hudson Police Dept.,* 577 F.3d 415, 430 n. 9 (citing *Saucier* ). [18] Expressly recognizing that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Supreme Court recently retreated from the prior *Saucier* two-step mandate, concluding in *Pearson* that because "[t]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the ... prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." [19] *Pearson,* 555 U.S. at 236, 242, 129 S.Ct. at 818, 821. In other words, as recently emphasized by the Second Circuit, the courts "are no longer *required* to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so." *Kelsey,* 567 F.3d at 61 (citing *Pearson,* 129 S.Ct. at 821) (emphasis in original).

**\*9** For courts engaging in a qualified immunity analysis, "the question after *Pearson* is 'which of the two prongs ... should be addressed in light of the circumstances in the particular case at hand.' " *Okin,* 577 F.3d 430 n. 9 (quoting *Pearson* ). "The [*Saucier* two-step] inquiry is said to be appropriate in those cases where 'discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all .' " *Kelsey,* 567 F.3d at 61 (quoting *Pearson,* 129 S.Ct. at 818).

Addressing the second prong of the analysis, " '[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Nagle,* 2011 WL 614296, at \*11 (quoting *Saucier,* 533 U.S. at 202, 121 S.Ct. at 2156). When deciding whether a right was clearly established at the relevant time, a court should consider

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994) (quoting *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993)). The objective reasonableness test will be met, and qualified immunity enjoyed, where government officers of reasonable competence could disagree as to whether by his or her alleged conduct the defendant would be violating the plaintiff's rights. *Okin,* 577 F.3d at 433 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). "If, on the other hand, no officer of reasonable competence would conclude that the conduct in question is lawful, there is no immunity." *Okin,* 577 F.3d at 433 (citing *Lennon v. Miller,* 66 F.3d 416, 420–21 (2d Cir.1995)).

In this instance, plaintiff alleges that her right to procedural due process was violated when her name was entered in the State Central Register without notice and an opportunity to be heard. Whether plaintiff can show a violation of a constitutional right in this case turns on whether she can establish that she was deprived of a liberty or property interest without adequate procedural safeguards, a premise which, as was discussed above, seems highly unlikely. Nonetheless, reading plaintiff's complaint in a light most favorable to her, as the court must at this juncture, I cannot unequivocally conclude that the alleged conduct did not violate a constitutional right.

Turning to the second prong of the qualified immunity test, it is worth noting that in recognition of the competing interests and difficult alternatives presented to child protective workers faced with allegations of abuse, the Second Circuit has recognized that qualified immunity protection is essential and provides "substantial protection for case workers" so long as their conduct was objectively reasonable.[20] *Tenenbaum v. Williams,* 193 F.3d 581, 596 (2d Cir.1999) (quoting *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (other citation omitted). Under the Social Services Law, the placement of an individual's name on that list is automatically triggered by a report of suspected abuse that would be legally sufficient to support such a charge. *Valmonte,* 18 F.3d at 995. The statute does not provide a right to a hearing prior to that occurrence. *See generally* N.Y. Soc. Serv. Law §§ 422 and 424. The court's research has revealed no authority suggesting that the current relevant provisions of the Social Services Law are constitutionally defective. Under the circumstances presented, I have therefore concluded that at the time of the occurrences in the complaint, there was no clearly established right to notice and an opportunity to be heard before plaintiff's name was entered on the State Central Register, and that Murko's alleged misconduct, which was entirely consistent with the statutory provisions, was objectively reasonable.[21]

### 3. *Personal Involvement*

**\*10** With respect to defendant Johnson, the Commissioner of Broome County Social Services, there are no facts alleged in the complaint which support plaintiff's claims against him. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright,* 21 F.3d at 501 (citations omitted). As the Supreme Court has noted, a defendant may only be held accountable for his or her actions under section 1983. *Iqbal,* 129 S.Ct. at 1952. In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

Although defendant Johnson is named in the caption of plaintiff's complaint, there are no allegations against this defendant contained in plaintiff's submissions, and thus no showing that he was personally involved in any of the alleged misconduct. Moreover, to the extent that he is named solely as a result of his position as commissioner, it is well established that a supervisor cannot be liable for damages under Section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under Section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds sub nom., Ashcroft v. Iqbal,* 556 U.S. 662,556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009);[22] *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501.

Because there are no allegations in plaintiff's pleading that would support a plausible basis for a finding of liability against defendant Johnson, I recommend that the claims against him be dismissed.

### 4. *Plaintiff's Remaining Claims*

Liberally construed, plaintiff's complaint may be interpreted to assert additional constitutional violations, including the Fourth, Fifth, and Ninth Amendments. All of these claims are readily resolved.

Addressing the later first, "[t]he Ninth Amendment is a rule of construction, not one that protects any specific right, and so no independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action." *McZorn v. Johnson City Police Dep't,* No. 3:08–CV–0726, 2009 WL 5216946, at * 7 (N.D.N.Y. Dec.30, 2009) (McAvoy, S.J.) (quoting *McZorn v. Endicott Police Dep't,* 2008 WL 163581, at *11 (N.D.N.Y.2008) (in turn citing *Diaz v. City of New York,* No. 00–CV–2944, 2006 WL 3833164, at *7 (E.D.N.Y. Dec. 29, 2006) (internal quotation marks and citations omitted)). Accordingly, the Ninth Amendment provides no basis for plaintiff's section 1983 claim.

**\*11** Turning to the Fifth Amendment, plaintiff seems to allege that her *Miranda* rights were violated when defendant Murko entered her home. [23] The court's research has not identified any legal authority providing plaintiff with such right. *See Ward v. Murphy,* 330 F.Supp.2d 83, 96 (D.Conn.2004). Moreover, as observed by the district court in *Ward,* even if the court were to assume that *Miranda* applies, the plaintiff's claim would nonetheless fail because her remedy would be exclusion from evidence of any ensuing self-incriminating statements, not a claim under section 1983. *Id.* (quoting *Neighbour v. Covert,* 68 F.3d 1508, 1510 (2d Cir.1995), *cert. denied,* 516 U.S. 1174, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996)). As a result, plaintiff's Fifth Amendment claim likewise fails to support her section 1983 cause of action.

Plaintiff's Fourth Amendment claim similarly gives the court little pause. In this regard, plaintiff's complaint suggests that the investigation conducted by defendant Murko at plaintiff's home constituted an unconstitutional search. "A warrantless search, although generally considered unreasonable, is permissible under the Fourth Amendment if conducted on the basis of consent of an authorized person." *United States v. Pollaro,* 733 F.Supp.2d 364, 368 (E.D.N.Y. Aug.16, 2010) (citing *Schneckloth v. Bustamante,* 412 U.S. 214, 245, 93 S.Ct. 2041 (1973) (other citations omitted); *Koch v. Town of Brattleboro,* 287 F.3d 162, 167 (2002) ("A search conducted pursuant to consent ... does not require probable cause or a warrant.") (citation omitted). By plaintiff's own admission, she allowed defendant Murko to enter her home; as a result, she has failed to state a violation of the Fourth Amendment. *Ward,* 330 F.Supp.2d at 94–95 (finding no Fourth Amendment claim where plaintiff consented to child protective investigator's entry into his home). [24] , [25]

Finally, plaintiff's complaint may be interpreted to also assert a claim for conspiracy. To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts." *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) (citations and internal quotation marks omitted). Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983. *See Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983).

Plaintiff's complaint does not allege facts showing an agreement or a "meeting of the minds" between the named defendants, or any details as to the time and place of the alleged conspiracy, or its objective. Such deficiencies are fatal to plaintiff's conspiracy claim. *Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999). Because plaintiff has asserted her claim of conspiracy in only vague and conclusory terms, that claim is subject to dismissal as well. [26]

**\*12** For all of the foregoing reasons, I recommend dismissal of plaintiff's complaint against defendants Murko and Johnson.

IV. *ANALYSIS OF PLAINTIFF'S CLAIMS IN POWELL v. NICELY, ET AL.*

A. *Background* [27]

In her second action, filed in December 2011, plaintiff asserts a breach of contract claim against five individuals, four of whom appear to be insurance adjusters, as well as Geico Insurance Company, together with CCS Information Services, and an individual apparently employed by that entity. [28] On September 8, 2011, plaintiff submitted a claim for water damage to her vehicle to her automobile insurance carrier. Shortly thereafter, plaintiff was issued a check fo $6,249.00, which she accepted under protest. Plaintiff alleges that defendants relied upon information contained within "CCC Value Market Report/CCC Information Services Inc." to pay the claim and refused to negotiate with her in good faith. Plaintiff subsequently received an additional check in the amount of $1,107.00. Plaintiff claims that the value of her vehicle, and apparently the amount she was entitled to be reimbursed, is $10,500.00. The essence of plaintiff's claim is a breach of contract based upon defendants' failure to deal with her in good faith.

B. *Jurisdiction*

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, federal jurisdiction is available only when a federal question is presented, or when the parties are of diverse citizenship, and the amount in question exceeds $75,000. It is well established that the court may raise the question of jurisdiction *sua sponte* and that where jurisdiction is lacking, "dismissal is mandatory." *United Food & Commercial Workers Union, Local 919, AFL–CIO v. Centermark Properties Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994); *see also* Fed.R.Civ.P. 12(h)(3).

To the extent that plaintiff's complaint seeks to invoke the court's diversity jurisdiction, 28 U.S.C. § 1332 provides that

> the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum of value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign matter; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or different States.

28 U.S.C. § 1332(a). Thus, diversity jurisdiction exists only if there is diversity of citizenship between the parties, and the matter in controversy exceeds the sum or value of $75,000. *See* 28 U.S.C. § 1332(a); *see also* *Dakari v. Dawson,* No. 5:05–CV–1494, 2006 WL 88659, at *2 (N.D.N.Y. Jan 11, 2006).

Additionally, where "jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced." *Universal Licensing Corp. v. Paola del Lungo S.p.A.,* 293 F.3d 579, 581 (2d Cir.2002). Section 1332 requires complete diversity of citizenship. *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). In other words, "diversity jurisdiction is not ... available when any plaintiff is a citizen of the same State as any defendant." *Id.* at 374, 98 S.Ct. at 2403. The general rule is that " '[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete.' " *Herrick Co. v. SCS Commc'ns Inc.,* 251 F.3d 315, 322–23 (2d Cir.2001) (quoting *Advani Enters., Inc. v. Underwriters at Lloyds,* 140 F.3d 157, 160 (2d Cir.1998)). Thus, it is a plaintiff's burden to demonstrate the existence of diversity jurisdiction on the face of the complaint. *See* *John Birch Soc'y v. Nat'l Broadcasting Co.,* 377 F.2d 194, 198 (2d Cir.1967); *Baker v. Latham Sparrowbush Assocs.,* 808 F.Supp. 992, 1001 (S.D.N.Y.1992).

**\*13** In this case, it is not at all clear from the face of plaintiff's complaint that diversity of citizenship exists. Plaintiff merely alleges that the five individual defendants transact business in Broome County, New York, and there are no allegations suggesting that they are domiciled in another state. For this reason alone, plaintiff's complaint is subject to dismissal.

Plaintiff has similarly failed to establish the requisite jurisdictional threshold for damages. "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability the claim is in excess of the statutory jurisdictional amount." *Scherer v. The Equitable Life Assurance Soc'y of the U.S.,* 347 F.3d 394, 397 (2d Cir.2003). A rebuttable presumption exists that "the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* at 396 (citing *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 63 (2d Cir.1999)). As observed by the Second Circuit nearly half a century ago, yet resonating perhaps even more today,

> [w]ith mounting caseloads ... and increasing numbers of cases awaiting trial, it has become doubly important that the district courts take measures to discover those suits which ought never to have been brought in the federal court and to dismiss them when the court is convinced to a legal certainty that the plaintiff cannot recover an amount in excess of [the jurisdictional limit].

*Arnold v. Troccoli,* 344 F.2d 842, 845 (2d Cir.1965). "[I]f [the] court makes a face-of-the-complaint determination that the $75,000 amount in controversy cannot be recovered 'to a legal certainty,' the case is dismissed for lack of subject matter jurisdiction." *Hall v. Earthlink Network, Inc.,* 396 F.3d 500, 507 n. 5 (2d Cir.2005) (quoting *Scherer* ).

Even when liberally construed, the most the court can glean from plaintiff's pleading is a potential claim for breach of contract. More importantly, affording plaintiff the benefit of ever favorable inference that can be drawn from her complaint, the damages that plaintiff has sustained, if any, by her own admission, total no more than $3,144.00, which is the difference between the amount she was paid on her insurance claim and the alleged value of her vehicle.[29]

For these reasons, notwithstanding plaintiff's demand for $100,000 in compensatory damages and $200,000 in punitive damages, I have concluded to a legal certainty that plaintiff cannot satisfy the jurisdictional minimum of $75,000 necessary to invoke this court's diversity jurisdiction and therefore recommend that plaintiff's second lawsuit be dismissed for lack of jurisdiction.

## V. *NATURE OF DISMISSAL*

Generally, when a *pro se* action is dismissed *sua sponte,* the plaintiff should be allowed to amend his or her complaint. *See Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (finding that repleading would be futile) (citation omitted); *see also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted); *cf. Gomez,* 171 F.3d at 796 (granting leave to amend is appropriate "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted); *accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted).

 **\*14** Here, I have concluded that the problem with plaintiff's pleadings in these actions is substantive and therefore recommend dismissal without leave to amend.

## VI. *BAR ORDER*

A review of plaintiff's litigation history reveals that in addition to filing the two current actions, she has previously filed fourteen other lawsuits in this district in which she sought leave to proceed *in forma pauperis;* with one exception, all of those actions were dismissed. In the first action the court's research has identified, *Powell v. Powell,* 3:94–CV–0430 (N.D.N.Y. filed on March 31, 1994), plaintiff's IFP application was denied, and the complaint was dismissed *sua sponte* by the court pursuant to section 1915(d).[30] In another, *Powell v. Marine Midland, et al.,* 3:95–CV–0063 (N.D.N.Y. filed January 17, 1995), after plaintiff was granted IFP status, the complaint was dismissed upon the defendants' pre-answer motion to dismiss. Senior District Judge Thomas J. McAvoy denied plaintiff's IFP application and *sua sponte* dismissed plaintiff's complaint in *Powell v. Sedula,* 3:96–CV–0436 (N.D.N.Y. filed November 13, 1996), pursuant to the predecessor provision to section 1915(e). In *Powell v. Galesi, et al.,* 3:97–CV–0900 (N.D.N.Y. filed June 26, 1997), Senior District Judge McAvoy granted plaintiff leave to proceed IFP, but *sua sponte* dismissed her complaint pursuant to section 1915(e)(2) (B), ordering that any appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).[31]

Plaintiff withdrew her complaint in *Powell v. Manny, et al.,* 3:96–CV1703 (N.D.N.Y. filed October 25, 1996), following over a year of litigation, after advising the court that she could not meet a court-imposed deadline for joining parties. In *Powell v. Social Services et al.,* 3:99–CV–2043 (N.D.N.Y. filed November 24, 1999), plaintiff's IFP application was denied, her complaint

dismissed *sua sponte* by the court pursuant to section 1915(e)(2)(B), and her appeal of that order of dismissal was dismissed by the Second Circuit as frivolous. *Powell v. Houser,* 3:00–CV–0666 (N.D.N.Y. file April 28, 2000), another matter in which plaintiff was granted IFP status, was dismissed on defendants' motion for summary judgment. In *Powell v. Nyhoff,* 3:01–CV–1604 (N.D.N.Y. filed October 19, 2001), plaintiff's request to proceed *in forma pauperis* was denied and her complaint *sua sponte* dismissed for failure to state a cause of action. *Powell v. American General, et al.,* 3:02–CV–1605 (N.D.N.Y. filed December 31, 2002), in which plaintiff was granted leave to proceed IFP, was dismissed for failure to state a cause of action upon defendants' Rule 12(b)(6) motion. Plaintiff again was granted IFP status in *Powell v. New York State Board of Law Examiners, et al.,* 3:04–CV–1125 (filed September 27, 2004); her amended complaint, filed with leave of court after dismissal of the original complaint, was *sua sponte* dismissed pursuant to section 1915(e)(2)(B).

**\*15** In *Powell v. Mayor Richard A. Bucci, et al.,* 3:04–CV–1192 (filed October 15, 2004), after filing an IFP application, plaintiff submitted an amended complaint before the court had an opportunity review her original filing; the amended complaint was *sua sponte* dismissed without prejudice for failure to comply with the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure, and her IFP application was denied without prejudice as incomplete. Her second amended complaint and second IFP application were likewise *sua sponte* dismissed and denied, respectively, for the same reasons. Plaintiff's third amended complaint was accepted for filing, and her corresponding request to proceed IFP was granted. Her claims were subsequently dismissed as a matter of law on defendants' motions for summary judgment.

In *Powell v. Williams,* 3:06–CV–0781 (N.D.N.Y. filed June 23, 2006), plaintiff was once again granted permission to proceed IFP, and her was complaint dismissed *sua sponte* by the court. In *Powell v. U–Haul Int'l,* No.3:10–CV–1531 (N.D.N.Y. filed December 20, 2010), proceeding IFP, the majority of plaintiff's claim were *sua sponte* dismissed by the court, and the remainder of her claims were dismissed on defendants' Rule 12(b)(6) motion. Most recently, in *Powell v. Delta Airlines,* No. 3:11–CV1432 (N.D.N.Y. October 20, 2011), though granting plaintiff's request to proceed IFP, the court *sua sponte* dismissed her complaint with prejudice for failure to state a cause of action.

The court's authority to sanction litigants for "vexatious, harassing or duplicative lawsuits" is well-established. *Hong v. Mai Sa v. Doe,* 406 F.3d 155, 156 (2d Cir.2005) (citing *Iwachiw v. N.Y. State Dep't of Motor Vehicles,* 396 F.3d 525, 528 (2d Cir.2005)) (other citation omitted). The court's authority derives from "Fed.R.Civ.P. 11, 28 U.S.C. § 1651(a), and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings." *O'Neil v. Bebee,* No.5:09–CV–1133, 2010 WL 502948, at \*11 (N.D.N.Y. Feb.10, 2010) (Suddaby, J.). Such sanctions are clearly appropriate where, as here, "a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints." *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (citing cases). The array of sanctions the court may impose includes restrictions on future access to the judicial system, including a prohibition on filing matters absent leave of court. *Id.* The court may not, however, issue such an injunction *sua sponte* without providing the litigant notice and an opportunity to be heard. *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) (citing cases).

As detailed above, at least eight of the previous fourteen actions filed by plaintiff have been dismissed *sua sponte* by the court for failure to state a cause of action and/or as frivolous, and all of the rest, except for one, have been dismissed as matter of law upon motion of the defendants. In my view, plaintiff's litigation history has resulted in a waste of judicial resources and exhibits precisely the type of frivolous and vexatious conduct that warrants imposition of a filing injunction.

**\*16** In light of the foregoing, I will recommend that the court issue an order directing that plaintiff appear and show cause as to why an injunction prohibiting her from any future *pro se* filings without prior permission of the court should not be entered. See *Azbuko v. Unknown Boston Police Officers,* Nos. 5:08–CV–69 (NPM) (GJD), 5:08–CV–75 (NPM)(GJD), 5:08–CV–330 (NPM)(GJD), 5:08–CV–331 (NPM)(GJD), 2008 WL 1767067 (N.D.N.Y. Apr. 16, 2008) (McCurn, S.J.) (imposing injunction on the plaintiff, after notice and an opportunity to be heard, prohibiting the *pro se* filing of any future pleadings or documents of any kind with the court absent leave of court); *O'Neil v. Bebee, et al.,* No. 5:09–CV–1133, slip op. (N.D.N.Y. filed March 19, 2010) (Suddaby, J.) (barring plaintiff, after notice and an opportunity to be heard, from filing any future *pro se* actions without leave of the court).

## VI. *CONCLUSION*

Plaintiff, a prolific *pro se* litigant who has many times been afforded the privilege of proceeding in this court *in forma pauperis,* has exhibited a clear pattern of filing meritless and harassing actions in this district. Her litigiousness over the years has imposed a burden on this court's resources and caused those whom she has sued to devote time and expense to defend against her frivolous claims. After carefully analyzing plaintiff's pleadings, I have concluded that her two most recent actions, consistent with the fourteen previously filed lawsuits, are wholly lacking in merit and must be dismissed. In addition, after considering plaintiff's extensive litigation history and the imposition upon the court and private parties caused by her vexatious actions, I find that an injunction against any future *pro se* filings absent court permission secured in advance is warranted.

WHEREFORE, it is hereby respectfully,

RECOMMENDED these actions be dismissed and that plaintiff be directed to show cause, within thirty (30) days of any decision and order adopting this report and recommendation in full, as to why the court should not issue an order barring her from filing any future *pro se* actions or documents in this court without prior leave of the court.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the plaintiff in accordance with this court's local rules.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 4052261

---

### Footnotes

1    *Powell v. Powell,* 3:94–CV–0430; *Powell v. Marine Midland, et al.,* 3:95–CV–0063; *Powell v. Manny, et al.,* 3:96–CV–1703; *Powell v. Sedula,* 3:96–CV–0436; *Powell v. Galesi, et al.,* 3:97–CV–0900; *Powell v. Social Services, et al.,* 3:99–CV–2043; *Powell v. Houser,* 3:00–CV–0666; *Powell v. Nyhoff,* 3:01–CV–1604; *Powell v. American General, et al.,* 3:02–CV–1605; *Powell v. New York State Board of Law Examiners, et al.,* 3:04–CV–1125; *Powell v. Mayor Richard A. Bucci, et al.,* 3:04–CV–1192; *Powell v. Williams,* 3:06–CV–078; *Powell v. U–Haul Int'l,* No.3:10–CV–1531; and, *Powell v. Delta Airlines,* No. 3:11–CV–1432.

2    Plaintiff's IFP application is presently pending in the later filed action, for which I am also the assigned magistrate judge and which was originally assigned to Senior District Judge Thomas J. McAvoy. Given the similarity of issues raised by plaintiff's IFP applications in both matters, the court has exercised its discretion in accordance Rule 42(a) of the Federal Rules of Civil Procedure and consolidated *Powell v. Johnson, et al.,* No. 3:11–CV–1432, with *Powell v. Nicely, et al.,* No. 3:11–CV1471, for the purposes of addressing plaintiff's request to proceed IFP in both cases, designating the former as the lead case and the later as the member case. *See* Text Order of 12/29/11.

3    Plaintiff sought and was granted leave to withdrawn her complaint in *Powell v. Manny, et al.,* 3:96–CV–1703, Dkt. No. 86.

4    Plaintiff's IFP applications, which she has signed and verified as true under penalty of perjury, are incomplete and seemingly inconsistent. *Compare Powell v. Johnson,* No. 3:11–CV–1432, Dkt. No. 2, *with Powell v. Nicely, et al.,* No. 3:11–CV1471, Dkt. No. 2. On her application in the lead case plaintiff has neglected to fully answer question three, which requests plaintiff to identify sources of income, responding only that she is on Medicare, that her disability payments have been terminated, and that she has received approximately $400–600 per month from selfemployment. *See Powell v. Johnson,* No. 3:11–CV–1432, Dkt. No. 2, at ¶ 3. She also states that she owns nothing of value and that she supports a grandson, for whom she receives $200 per month for support. *Id.* at ¶¶ 5–6. In her second IFP application, filed just eight days later, plaintiff similarly fails to completely respond to question three, and identifies a greater monthly income of $900 from part-time self-employment, described as mail orders of books or CDs. *Powell v. Nicely, et al.,* No. 3:11–CV–147, Dkt. No. 2, at ¶ 3. In contrast to the earlier application, plaintiff identifies a vehicle valued at $10,000–10,500 as property that she owns. *Id.* at ¶ 5. Again, she identifies a grandson as a depend and vaguely states "100%. I receives [sic] child support for him." Plaintiff's failure to fully complete these IFP applications alone is sufficient to warrant denial of her request. *See Oparaji v. Atlantic Container Line,* No. 07 Civ. 2124(GEL), 2008 WL 4344522, at * 2 (S.D.N.Y. Sep.23, 2008). Additionally, section 1915(e) provides that if at any time the court determines that an allegation of poverty in an IFP application is untrue, it "shall" dismiss the case. *Vann v. Horn,* No. 10 Cv. 6777(PKC), 2011 WL 3501880, at *1 (S.D.N.Y. Aug. 9, 2011) (quoting 28 U.S.C. § 1915(e)(2)(A)). In this regard, it is worth noting that while a mere misstatement on an IFP application does not justify dismissal, where the misstatement is so egregious as to rise to the level of fraud or bad faith dismissal will eventuate. *Morales v. E.I. Du Pont De Nemours and Co.,* No. 02–CV–786A(F), 2004 WL 2106590, at *2 (W.D.N.Y. Sep.21, 2004) (citing cases). At this juncture, it does not appear that plaintiff's misstatement of her assets is so flagrant as to constitute fraud or bad faith.

5    "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States,* Nos. 3:99–MC–304, 3:99–MC–408, 1999 WL 1067841, at *2 (D.Conn. Nov.8, 1999) (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998)); *see also Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989) and *Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir.1995) ( "[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

6    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

7    Since the court will employ the same standard applicable on a Rule 12(b)(6) motion to dismiss in reviewing plaintiff's complaint, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the court's section 1915 review. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (citing *Bell Atl. Corp.,* 550 U.S. at 555–56, 127 S.Ct. at 1965); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964).

8    Instead of a single integrated pleading, plaintiff filed a document identified as a complaint and attached thereto a motion for permission to pursue an action for violation of 42 U.S.C. § 1983, accompanied by a memorandum of law and an affidavit with an attachment thereto. In deference to plaintiff's *pro* se status, I will treat these documents together as constituting one pleading.

9    Plaintiff does identify the date of any of the alleged occurrences in the complaint. The attachment to her pleading suggests that the investigation by Broome County Department of Social Services began on October 2, 2009.

10    These terms are statutorily defined in section 412 of the Social Services Law.

11    Should a parent or guardian of a child who is the subject of a report of maltreatment refuse the local department of social services access to the child and/or home, the child protective investigator is authorized to seek an immediate family court order to gain access, and law enforcement may be contacted. N.Y. Soc. Serv. Law § 424(6–a).

12    The complaint does not indicate whether the state or local authorities received the initial report of abuse.

13    It appears that there have been numerous amendments to Article 6 of the Social Services Law since *Valmonte* was decided in 1994.

14    A "family day care home" is defined as "a residence in which child day care is provided on a regular basis for more than three hours per day per child for three to six children for compensation or otherwise, except as provided in this subdivision...." 18 N.Y.C.R.R. § 413.2(h)(2)(I).

15    Under the statute certain persons are legally bound to report abuse or maltreatment of a child, including,

   any physician; registered physician assistant; surgeon; medical examiner; coroner; dentist; dental hygienist; osteopath; optometrist; chiropractor; podiatrist; resident; intern; psychologist; registered nurse; social worker; emergency medical technician; licensed creative arts therapist; licensed marriage and family therapist; licensed mental health counselor; licensed psychoanalyst; hospital personnel engaged in the admission, examination, care or treatment of persons; a Christian Science practitioner; school official, which includes but is not limited to school teacher, school guidance counselor, school psychologist, school social worker, school nurse, school administrator or other school personnel required to hold a teaching or administrative license or certificate; social services worker; director of a children's overnight camp, summer day camp or traveling summer day camp, as such camps are defined in section thirteen hundred ninety-two of the public health law; day care center worker; school-age child care worker; provider of family or group family day care; employee or volunteer in a residential care facility defined in subdivision four of section four hundred twelve-a of this title or any other child care or foster care worker; mental health professional; substance abuse counselor; alcoholism counselor; all persons credentialed by the office of alcoholism and substance abuse services; peace officer; police officer; district attorney or assistant district attorney; investigator employed in the office of a district attorney; or other law enforcement official.

   N.Y. Soc. Serv. Law § 413(1)(a). The statute additionally provides that "a person or official required to make a report of suspected child abuse or maltreatment pursuant to section four hundred thirteen of this chapter ... shall receive, upon request, the findings of the investigation ...". *Id.* at § 422(4)(A)(aa). If such a request is made after completion of an investigation, the information that may be released is limited to whether the report is "indicated" or "unfounded." *Id.*

16    Additionally, I note that there are no allegations in the complaint suggesting Murko's personal involvement in the alleged due process violation insofar as there are no allegations that any action taken by Murko resulted in the placement of plaintiff's name on the state register. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)).

17    In making the threshold inquiry, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151, 150 L.Ed.2d 272.

18    In *Okin,* the Second Circuit clarified that the " 'objectively reasonable' inquiry is part of the 'clearly established' inquiry", also noting that "once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for the [government] officer who violated the clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful." *Okin,* 577 F.3d at 433, n. 11 (citation omitted).

19    Indeed, because qualified immunity is "an immunity from suit rather than a mere defense to liability ...", *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Pearson,* 555 U.S. at 231, 129 S.Ct. at 815 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 524, 116 L.Ed.2d 589, ——— (1991) (per curiam)).

20    Indeed, that court has expressly stated that,

> protective services caseworkers [must] choose between difficult alternatives.... If they err in interrupting parental custody, they may be accused of infringing the parents' constitutional rights. If they err in not removing the child, they risk injury to the child and may be accused of infringing the child's rights. It is precisely the function of qualified immunity to protect state officials in choosing between such alternatives, provided that there is an objectively reasonable basis for their decision, whichever way they make it.

> *Tenenbaum,* 193 F.3d at 597 (quoting *van Emrik v. Chemung Cty. Dep't of Social Servs.,* 911 F.2d 863, 866 (2d Cir.1990) (footnote omitted)) (other citation omitted) (alterations in original).

21    "The reasonableness of the official's action is ... 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.' " *Nagle,* 663 F.3d 100, 2011 WL 6142196, at *12 (quoting *Anderson,* 483 U.S. at 639, 107 S.Ct. 3034, 97 L.Ed.2d 523) (alteration in original).

22    The issue of supervisory liability for civil rights violation was addressed by the Supreme Court recently in its decision in *Ashcroft v. Iqbal.* The Second Circuit has yet to address the impact of Iqbal upon the categories of supervisory liability under *Colon.* Lower courts have struggled with this issue, and specifically whether *Iqbal* effectively calls into question certain prongs of the Colon five-part test for supervisory liability. *See Sash v. United States,* 674 F.Supp.2d 531, 542–544 (S.D.N.Y.2009); *see also Stewart v. Howard,* No. 9:09–CV–0069 (GLS/GHL), 2010 WL 3907227, at *12 n. 10 (N.D.N.Y. Apr.26, 2010) ("The Supreme Court's decision in [*Iqbal* ] arguably casts in doubt the continued vitality of some of the categories set forth in *Colon."* ) (citations omitted), *report and recommendation adopted,* 2010 WL 3907137 (Sept. 30, 2010). While some courts have taken the position that only the first and third of the five *Colon* categories remain viable and can support a finding of supervisory liability, *see, e.g., Bellamy v. Mount Vernon Hosp.,* No.07 CIV. 1801, 2009 WL1835939, at *6 (S.D.N.Y. June 26, 2009), *aff'd,* 387 Fed. App'x 55 (2d Cir.2010), others disagree and conclude that whether any of the five categories apply in any particular case depends upon the particular violations alleged and the supervisor's participatory role, *see, e.g., D'Olimpio v. Crisafi,* Nos. 09 Civ. 7283(JSR), 09 Civ. 9952(JSR), 2010 WL 2428128, at *5 (S.D.N.Y. Jun. 15, 2010); *Qasem v. Toro,* No. 09 Civ. 8361(SHS), 2010 WL 3156031, at *4 (S.D.N.Y. Aug.10, 2010).

23    Plaintiff apparently contends that, in the context of a child protective investigation, an individual has rights similar to those articulated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (holding that an individual subjected to custodial interrogation must be advised of his right to counsel and right to silence).

24    Even if plaintiff had alleged a Fourth Amendment violation, I have already concluded that defendant Murko's actions were objectively reasonable and that plaintiff's claims are therefore precluded by the doctrine of qualified immunity.

25    Because Fourth Amendment rights are personal, plaintiff cannot assert a claim on behalf of the child who was the subject of the investigation. *Tenenbaum,* 193 F.3d at 602 n. 13. *Ward,* F.Supp.2d at 94 n. 8.

26    Plaintiff's complaint also alleges negligence and references the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.* It is well established that section 1983 does not provide remedy for every common law tort...." *Johnson v. Wigger,* 2009 WL 2424186, at *8 (N.D.N.Y.2009) (Scullin, S.J. & Lowe, M.J.) (citing *Williams v. Pecchio,* 543 F.Supp. 878, 879 (W.D.N.Y.1982)). As stated by the Second Circuit,

> The Supreme Court has recognized that, "[i]n some circumstances, the interests protected by a particular brand of the common law of torts may parallel closely the interests protected by a particular constitutional right," (citation

omitted); still, it is only the violation of a constitutional right that is actionable and compensable under section 1983. "The validity of the claim must [therefore] be judged by reference to the specific constitutional standard which governs that right...."

*Singer v. Fulton County Sheriff,* 63 F.3d 110, 116 (2d Cir.1995) (quoting *Carey v. Piphus,* 435 U.S. 247, 258059, 98 S.Ct. 1042, 104901210, 55 L.Ed.2d 252 (1978)). Consequently, to the extent plaintiff claims defendants were negligent, she has failed to state a claim under section 1983. She similarly has failed to state a claim under the FTCA because that statute does not give rise to federal tort claims against county employees. *Cisnevas–Garcia v. Shipman,* No. 9:10–CV–179, 2010 WL 3491359, at *2 (N.D.N.Y. Aug.31, 2010) (Scullin, S.J.).

27    Again, in light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the court's section 1915 review. *See Erickson,* 551 U.S. at 94, 127 S.Ct. at 2200 (citation omitted).

28    As is the case with her earlier filed action, plaintiff has not filed a single integrated pleading. Instead, she has filed a document identified as a complaint and attached thereto a motion for permission to pursue an action for breach of contract, accompanied by a memorandum of law and an affidavit. Once again, in deference to plaintiff's *pro* se status, the court will treat these documents as one pleading.

29    Even this amount, however, appears to overstate plaintiff's damages since it seems implausible that she would be entitled to be compensated for the market value of her vehicle if it was not completely destroyed, and plaintiff alleges that she has received offers for the purchase of her vehicle in the amount of $10,500.00.

30    Section 1915 was amended in 1996 and subsection (d) was redesignated as subsection (e). Pub.L. 104–134. As was discussed above, upon an initial review of an complaint submitted with an application to proceed IFP, section 1915(e) requires the court to dismiss an action found to be frivolous or malicious, that fails to state a cause of action, and/or brought against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e).

31    Section 1915(a)(3) provides,

An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith.

28 U.S.C. § 1915(a)(3) (emphasis added).

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.